CYRUS CUMMINGS, *Adm'r, versus* ELIPHALET WEBSTER.

A party will be concluded from denying his own acts or admissions, which were expressly designed to influence the conduct of another, and did so influence it, and when such denial will operate to the injury of the latter, if the injured party, in the exercise of common and ordinary judgment and discretion, relies upon such acts.

But a party will not be estopped by formal statements and admissions unimportant, and by which no one is deceived, and when the facts are within his own knowledge.

The by-laws of a corporation, made in pursuance of their charter, are equally binding on all the members and others acquainted with their method of business, as any public law of the state.

Trover for the conversion of a policy of insurance, and comes before the court upon exceptions to the instructions of RICE, J., and upon motion to set aside the verdict for plaintiff, as against the evidence in the case, and for a new trial.

The plaintiff's intestate, having been insured in the Hamilton Mutual Insurance Company for the term of one year, upon his stock and tools, in Portland, at the expiration of that time made application for the renewal of his policy, through the defendant, who was an agent of that company, and to whom a new policy was sent, dated January second, A. D. 1854.

To the first policy was attached the company's by-laws, referred to and adopted as a part of the same, and containing among other declarations this: "All policies not settled for within thirty days from the date thereof, shall thereby become void."

Early in January, 1854, David Boyd, brother of the plaintiff's intestate, duly authorized, called upon the defendant, offered to take the policy and pay the premium. The defendant said the policy had come, and that it was all right, but that having changed his coat, it was not then with him; that he would get it and hand it to him. Eight or ten days after, defendant told Boyd he had the policy with him then, to which Boyd replied, "If it makes no difference, I should

rather my brother would take it, as it is his business altogether." Defendant said, " very well." The property insured, was lost by fire on the second day of February, 1854, and on the next morning Boyd called upon the defendant for the policy, who then said that it did not belong to his brother, as thirty days had expired, and the premium had not been paid.

The presiding judge instructed the jury that if the defendant had undertaken to procure insurance for the plaintiff's intestate, as alleged in the writ, and on inquiry by the intestate, or his agent, had affirmed that he had effected such insurance, and such affirmation was relied upon by said intestate, he, defendant, was bound by such affirmation and was estopped to deny the truth thereof; and the plaintiff, after an offer to comply with the terms of the contract, on his part, and on demand of the policy and a refusal to deliver the same by the defendant, would be authorized to institute and maintain this action. Other instructions were given which do not become material.

*Fessenden & Butler,* counsel for defendant, relied upon the conditions of the contract, and that as the old policy contained the same provisions as the one alleged to have been converted, the plaintiff had express notice of the conditions on which depended the validity of his insurance.

*Shepley & Dana,* counsel for plaintiff.

The first instruction is fully supported by the authorities 1 Greenl. Ev., sec. 208 ; 1 Phillips on Ins., 24 ; Kohne v. Ins. Co. of No. A., 1 Wash. C. C. R., 93 Ang. on F. and L. Ins., chap. 3, sec. 31 ; 1 Arn. on Ins., p. 139, sec. 70. To the point that it was not necessary that the note should have been given or premium paid. Loring v. Proctor, 26 Maine R., 18 ; Blanchard v. Waite, 28 Maine R., 51.

CUTTING J. This is an action of trover for the conversion of a policy of insurance.. Under the instructions of the presiding Judge a verdict was rendered for the plaintiff, and the

case comes before us on exceptions and a motion to set aside the verdict as being against law and evidence.

The first instruction, to which exception is taken, was based upon the opinion of Lord Mansfield, in the case of *Harding v. Carter*, (cited by Park on Ins., p. 4,) who held, " that where two brokers, instructed to effect insurance, wrote in reply that they had got two policies effected, which was false ; in an action of trover against them by the assured for the two policies, they were estopped to deny the existence of the policies ; and said he should consider them as the actual insurers." The doctrine enunciated in that case in 1781 has since been incorporated into most of the elementary treatises on insurance, and recognized as sound law by many eminent jurists. It is the general rule of estoppel *in pais*, " that a party will be concluded from denying his own acts or admissions, which were expressly designed to influence the conduct of another, and did so influence it, and when such denial will operate to the injury of another." *The Welland Canal Company v. Hathaway*, 8 Wend., 483. *Chapman v. Searle*, 3 Pick., 38, and 2 *Smith's Lead. Ca.*, 460, where the learned author remarks, that " courts, perceiving how essential it is to the quick and easy transaction of business, that one man should be able to put faith in the conduct and representations of his fellow, have inclined to hold such conduct and such representations binding in cases where a mischief or injustice would be caused by treating their effect as revocable. At the same time, they have been unwilling to allow men to be entrapped by formal statements and admissions, which were perhaps looked upon as unimportant when made, and by which no one ever was deceived or induced to alter his position. Such estoppels are still, as formerly, considered *odious*."

Since the rule given to the jury upon this point does not vary essentially from the foregoing authorities, it becomes necessary to examine the evidence under the motion, and ascertain, whether it be sufficient to sustain the verdict.

It appears that during the year 1853, the plaintiff's intestate had been insured by policy " No. 7830," to which were attached the company's charter and by-laws referred to in, and made by adoption a part of the same.   By force of that policy the intestate was admitted a member of the company, and as such was entitled to all the rights and privileges appertaining to such relation.   It may be presumed, therefore, that he was well acquainted with the by-laws and understood their binding force and validity.

Article *seventh* of the by-laws provides, that " No insurance shall take effect until the application has been approved by the president, or two of the directors, and till the terms of insurance fixed by the directors have been accepted by the applicant and the cash premium been paid ; and all policies not settled for within thirty days from the date thereof shall thereby become void."   And by article *ninth*, that " Each person shall pay, upon the execution of his policy and before its delivery, the premium thereon."   And further, by Article *thirteenth*, that " No insurance agent or broker forwarding applications to this office, is authorized to bind the company in any case whatever."

The policy now in controversy was a renewal of a previous one, and was in the possession of the defendant at the several interviews between him and David Boyd, brother of the intestate and a witness called by the plaintiff.   At the first conversation, he, Boyd, asked the defendant " if that insurance on his brother's stock and tools was all right.   He said it was all right, except taking the policy and paying the premium."   Subsequently, at a second conversation, the defendant offered the policy, when the witness said " if it didn't make any difference, he would rather his brother would take the policy, as it was his business," and the defendant said " very well."   This is the substance of all the conversation which took place between the witness and the defendant previous to the fire, and on which the plaintiff relies to sustain his action, and to bring it within the principle of the decision in *Harding v. Carter*.   That the witness was the agent of the

plaintiff's intestate, and subsequent to the fire tendered the amount of the premium and demanded the policy may be admitted; about which there seems to have been no controversy. Then the question as to the defendant's conversion depends entirely on the force and effect to be given under the circumstances to the defendant's reply, "very well." The question may here be asked, if the plaintiff's intestate was "entrapped," (to use the language already quoted.) Was it not by a formal statement, which was looked upon as unimportant at the time it was made and by which no one was ever deceived? It may be assumed as a general rule that the agent possesses the knowledge of his principal in relation to the subject matter of his agency. And we have seen that the plaintiff must have known all the terms and conditions upon which during the previous year he had been admitted and continued to be a member of the company. Or in the language of the court in *Barrett v. The Union Mutual F. Ins. Co.*, 7 Cush., 181, "If the assured accepted the policy, without looking at it, or knowing what it was, he would seem himself to be liable to the charge of culpable negligence made against the defendant."

By the by-laws of the company the policy remained theirs, and could not effectually be delivered until the advance premium had been paid, and the agent had no authority to bind the company by any promise of delay. Before the tender and demand were made the thirty days had elapsed from the date of the policy, and by article *seven* the same had "thereby become wholly void."

The judge charged the jury that "if defendant had affirmed that he had effected such insurance, that the intestate was insured, and such affirmation was relied on by said intestate, the said defendant was bound by such affirmation and was estopped to deny the truth thereof." It would perhaps have been better and conveyed a clearer idea to the jury if the Judge had explained to them some of the elements which in a legal sense constitute a man's *reliance*. The charge was broad enough to embrace ignorance of the law and gross

Cummings *v.* Webster.

stupidity on the part of the intestate in placing any confidence in the defendant's declarations so as to be injured thereby. But without doubt the Judge intended that the jury should understand by the term "affirmation relied on" the due exercise on the part of the intestate of common and ordinary judgment and discretion founded on his previous knowledge of the charter and by-laws of the company and their legal mode of transacting business. But it would seem that such considerations had no effect in influencing the jury, although the documents were placed before them.

The principles involved in this case are similar to those in *Hodgdon v. Chase*, 33 Maine R., 169, where the plaintiff delayed a suit to recover his account until after it was barred by the statute of limitations, upon the express verbal promise of the defendant that he would waive such defence, which on trial he violated, and the plaintiff, in consequence of relying on defendant's affirmation, lost not only his claim but was obliged to pay costs. There this court held that such a promise was not binding by the laws of the State, and if the plaintiff was too confiding and thereby sustained damage, it was through his own fault in placing more confidence in the declarations of his debtor than in the statute.

So here the by-laws of the company, made in pursuance of their charter, are equally as binding on all their members and others acquainted with their method of business as any public law of the State. And if all the facts which were laid before the jury were embodied in a declaration, on demurrer, the court must have come to the same result as in the case last cited. Therefore the jury were not authorized from the evidence to find that the plaintiff's intestate could have relied on, or was deceived by, any such affirmation, for in the exercise of common prudence he ought to have known, as a recent member of the company, that, if such a construction could be placed on the defendant's language, the company's by-laws had estopped *him* from resorting to it as an excuse for his own negligence. The whole testimony presents nothing less than a gross case of neglect

in keeping the property insured until after its unanticipated destruction, and then by interested parol testimony to make some one responsible out of the family. We say interested testimony, because it appears that, in answer to the 25th interrogatory in the application of the previous year, the same property was under incumbrance to David Boyd, and " in case of loss, amount due was to be paid to him." But we have assumed that the witness has testified truly, notwithstanding the defendant, (as disclosed by the depositions of Sanger and Philips, introduced by the plaintiff,) on oath, has denied that he ever gave credit.

Other questions arise as to the subsequent rulings and the effect to be given to the record of a former suit on the policy against the company, which at this time become immaterial. We are satisfied that the evidence upon the point already considered is not sufficient to sustain the verdict, *which consequently must be set aside and a new trial granted.*