Nov. Term,
1857.

THE STEAMBOAT J. P. TWEED *v.* RICHARDS.

THE STEAM-
BOAT, &c.
v.
RICHARDS.

The statute of this state providing for the enforcement of liens on boats and other water crafts, does not extend to maritime liens arising under contracts made and broken in other states.

APPEAL from the *Floyd* Circuit Court.

*Wednesday,*
*December 2.*

DAVISON, J.—*Richards* filed in the clerk's office of the Circuit Court, a complaint, in the form of an affidavit, wherein he alleges, that on the 28th of *June*, 1854, he contracted, at the city of *New Orleans*, with one *David Willard*, the then master of the steamboat *J. P. Tweed*, for the carriage of a bale of woolen goods from that city to *Memphis.* It is avered that the boat, her officers and agents, received the bale at *New Orleans*, but carelessly failed to deliver it at *Memphis*, and thereby it became lost, &c.; and that the goods, at the time the bale should have been delivered, were worth 2,000 dollars. The complaint demands judgment against the boat, her engines, tackle and apparel, for said 2,000 dollars, and interest thereon, &c. Upon the filing of the affidavit, a writ of attachment was duly issued, and directed to the sheriff, who, on the 24th of *August*, 1855, at *Floyd* county, seized the boat, which, on the same day, was redelivered to *Robert Desmukes*, one of her owners—he having given bond pursuant to the statute.

*Desmukes* appeared and answered. His answer contains two paragraphs:

1. A general denial, &c. 2. That the contract stated in the complaint was made at *New Orleans*, *Louisiana*, and the delivery of the goods was to be at *Memphis*, in *Tennessee*; and at the several times when the contract was made and to be executed, the steamboat was owned by *David Miller*, *James Miller*, and *Anderson Clements;* and that, after the contract was broken, before the boat was within the jurisdiction of this state, and long before the institution of this suit, the boat was, by the then owners, sold and delivered to *Desmukes* and *Couch*, the present owners, one of whom has given bond, &c. The answer directly avers that at the time of the breach of the contract,

Nov. Term, 1857.

THE STEAM-BOAT, &c. v. RICHARDS.

or the making thereof, *Desmukes* and *Couch* had no interest in, or connection with, the boat.

Demurrer to the second paragraph sustained. The issue made by the general denial was submitted to the Court, who found for the plaintiff 1,191 dollars. Over a motion for a new trial there was judgment, &c.

The appellee rests his complaint upon a statute, the purpose of which is "to enforce liens on boats and other water crafts." The following are among the provisions of the statute.

"Sec. 655. All boats, vessels and water crafts of every description, found in the waters of this state, are liable * * * * for all demands or damages arising out of any contract of affreightment, or any wilful or negligent act of the master, owner or agent thereof, done in connection with the business of such boat, vessel or water craft, or any contract relative to the transportation of persons or property, entered into by the master, owner, agent, clerk or consignee thereof."

* * * * * * * * * * *

"Sec. 656. Claims growing out of the above causes, are liens upon the boat, vessel or water craft, their apparel, tackel, furniture and appendages, including barges and lighters belonging to the owners of the boat, vessel or water craft, and used therewith at the time the action is commenced."—2 R. S., pp. 183, 184.

These enactments would evidently apply to the case at bar, had the contract for affreightment been entered into within this state. We have seen that that contract was not only made, but broken without the state; hence, it becomes necessary to inquire, whether the alleged lien could exist in virtue of the *Indiana* statute.

Mr. STORY says, that where the lien is created by the *lex loci contractus*, it will generally be enforced in all places where the property is found, or where the right can be enforced by the *lex fori*, and on the other hand, where the lien does not exist in the place of the contract, it will not be allowed in another country, although the local law where the suit is brought would otherwise sustain it. Story's

Confl. of Laws, s. 3226. This exposition involves the principle, that the law of lien is not of the remedy merely, but enters into and constitutes a part of the contract; and further, it accords with the doctrine, that where parties contract, it must be presumed that they do so in view of the law of the place where the contract is made. It is true the language of the statute is broad enough to embrace the case made by the record; but are we authorized to give it that construction? Generally speaking, a law can have no force beyond the territorial limits of the state enacting it; nor should any legislative act be intended to have such force, unless such intention be clearly and specifically expressed. In the statute before us, there is, indeed, nothing inconsistent with the construction that would confine its operations within the limits of the state; and it seems to us that any other construction would lead to the absurd consequence of property being encumbered with a lien for a claim growing out of a contract entered into by parties who could not, at the time they contracted, have contemplated the existence of such lien.

It is, however, argued that, by the general maritime law, a shipper has a lien on the vessel for the delivery of the goods; that the maxim is, "the ship is bound for the cargo, and the cargo for the ship;" that the plaintiff then had a lien on the *Tweed*, from the moment her officers received his goods, and he could have libelled her in the federal Court of any district where he could find her; that our state has done nothing more than recognize the same lien and given him a remedy in the state Courts. The answer to this is, that our statute itself creates a lien, and for that alone gives a remedy. The lien thus created is, in its character, domestic, operating as security for claims growing out of contracts entered into within the state. To enforce a maritime lien is a regulation of commerce, which belongs exclusively to congress; hence, such liens may be enforced in the federal Courts; but it seems very clear that a state legislature has no power to clothe the state Courts with such jurisdiction.

In giving a construction to a statute of *Michigan*, on the

Nov. Term, 1857.

THE STEAM-
BOAT, &c.
v.
RICHARDS.

Nov. Term, 1857.

subject of liens on vessels found in the waters of that state, Justice McLEAN says: "No one, it is supposed, will contend that the statute embraces a maritime lien, or that the legislature had power to regulate such lien." *O' Callahan* v. *Riggs*, 5 Amer. Law Reg., 139, 141. In that case it was decided that a maritime lien on a vessel, is paramount to a domestic lien under a statute of a state of subsequent date. Here, the power of a state legislature to create a domestic lien on vessels is conceded, when at the same time it is in effect said that that which is the subject-matter of a maritime lien, is, by the constitution of the *United States*, withdrawn from state legislation, and belongs exclusively to the national government and its functionaries. 2 Story's R. 462, 463, 464.—5 Wheat. 1, 21, 22.—9 Wheat. 1, 196, 222.—12 How. 446, 467.—5 Amer. Law Reg., 148.—*Turner* v. *Lewis*, 2 Gibbs, 353.—4 Amer. Law. Reg., 120.

Our opinion is that the *Indiana* statute does not embrace the case made by the record, and that the judgment must therefore be reversed.

*Per Curiam.*—The judgment is reversed with costs, &c.

*W. T. Otto* and *J. S. Davis*, for the appellant.

*R. Crawford*, for the appellee.