## THE CITY OF AURORA v. WEST.

The counsel for the appellant, in the case of *The City of Aurora* v *West, ante,* p. 88, file briefs embracing the following arguments:

The powers of cities and towns are generally those only which are of a municipal character; such as the laying out and regulating of the streets, providing for schools, water and gas, the building or renting of town houses, school houses, the laying out of public squares, the regulating the police of the city, &c., &c.

Nothing could be more foreign to our ideas of municipal powers generally, or of the powers of cities and towns, than the taking of

stock by a small city like *Aurora* in such a rail road company as the *Ohio and Mississippi Rail Road Company*—a rail road which neither begins nor ends there, that barely touches the city as one of the way points or stations, and whose stock and costs is numbered by millions; and whose management is in the hands, not of the city authorities, or under the control of the citizens, but of a distinct board, sitting in distant cities in other States, and is regulated, not by the charter of the city of *Aurora*, but by the charter of the rail road company itself.

Corporate powers are strictly construed. Such companies are strictly confined to the powers to be found in their charters. The authorities upon this subject are many, and are from the highest Courts in this country and in *England*.

The rule upon the subject is thus expressed by the Supreme Court of *Pennsylvania*, in the case of *The Commonwealth* v. *The Erie and North-East R. R. Co.*, 27 Penn. 351.

Chief Justice *Black*, in giving the opinion of the Court in that case, says:

"That which a company is authorized to do by its act of incorporation, it may do; beyond that all its acts are illegal. And the power must be given in *plain* words or by *necessary* implication. All powers not given in this direct and unmistakable manner are withheld. It is strange that the Attorney General, or any body else, should complain against a company that keeps itself within bounds, which are always thus clearly marked; and equally strange that a company which has happened to transgress them should come before us with the faintest hope of being sustained. In such cases, ingenuity has nothing to work with, since nothing can be either proved or disproved by logic or inferential reasoning. If you assert that a corporation had certain privileges, show us the words of the legislature conferring them. Failing in this, you must give up your claim, for nothing else can avail you. A doubtful charter does not exist; because whatever is doubtful, is decisively certain against the corporation."

To the same effect are the following cases from the highest Courts in the country, and this doctrine is by no means new, and it flows directly from those fundamental principles of our government and

The City of Aurora *v.* West.

polity, which place the powers of the government in the body of the people, and guarantee equality of rights and privileges. *Perine* v. *The Ches. and Del. Canal Co.*, 9 How. U. S. R. 184; *Charles River Bridge* v. *Warren Bridge*, 11 Pets. 557; *Parsons* v. *Goshen*, 11 Pick. 399; *Abendorth* v. *The Town of Greenwich*, 29 Conn. 365; *Bacon* v. *The Miss. Ins. Co.*, 31 Miss. 116; *Manly* v. *St. Helen's Canal and R. R. Co.*, 2 H. & N. Ex. 853.

It is also well settled that the powers of municipal corporations are more restricted and limited than those of ordinary trading or manufacturing corporations.

This is very evident from an examination of the numerous cases determined by the highest Courts of the country.

This is well expressed in Angell and Ames on Corporations:

"That they (school districts) are not bodies politic and corporate, with the general powers of corporations, must be admitted; and the reasoning advanced to show their defect of power, is conclusive. The same may be said of towns, and other municipal societies; which, although recognized by various statutes and by immemorial usage, as persons, or aggregate corporations, with precise duties which may be enforced, and privileges which may be maintained, by suits at law, yet are deficient in many of the powers incident to the general character of corporations. They may be considered, under our institutions, as *qua* corporations, with limited powers, co-extensive with the duties imposed upon them by statute, or usage; but restrained from a general use of the authority, which belongs to these metaphysical persons by the common law." Angell and Ames on Corp., p. 18. See also: *Buffalo* v. *Dodge*, 2 Denio 112; *New London*, v. *Brainard*, 22 Conn. 556; *Parsons* v. *Goshen*, 11 Pick. 399; *The Town of Petersburg* v. *Mapin*, 14 Ill. 194–5; *Starin* v. *The Town of Genoa*, 23 N. J. 449, 455; *City of Lafayette* v. *Cox*, 5 Ind. 39, 40; *Wythe* v. *Mayor of Nashville*, 2 Swan. 365; *Thompson* v. *Schermerhorn*, 2 Seld. 92; *Reed* v. *The City of Toledo*, 18 Ohio 161; *Savannah* v. *Hartridge*, 8 Geo. 23; *Halstead* v. *The Mayor of N. Y.*, 3 Coms. 433; *Commonwealth* v. *Turner*, 1 Cush. 490; *State* v. *Ferguson*, 33 N. H. 430; *Collins* v. *Hatch*, 18 Ohio 525; *Heise* v. *Town Council*, 6 Rich. 414; *City of Rochester* v. *Collins*, 12 Barb. 562; *Council of Charleston* v. *Condy*,

4 Rich. 256; *Haywood* v. *The Mayor of Savannah*, 12 Geo. 409; *Buffalo* v. *Hodge*, 2 Denio. 111; *New London* v. *Brainard*, 22 Conn. 555.

Now if this be true of such acts as the celebrating the 4th of *July* and giving public dinners and receptions on such days, to building bridges and joining in the defence of the town, and in reference to those matters and things which relate solely to the city and its inhabitants, and to the police of such corporations, how much more do these rules hold as to such clauses as the 18th section of the city charter in question; for no one would at first thought conceive of its being a stockholder in a rail road from *Cincinnati* to *St. Louis*. *Starin* v. *The Town of Genoa*, 23 N. Y. 459; *Gould* v. *The Town of Sterling*, 23 N. Y. 464.

Now, although a rail road is a road, as was decided in the case of *West & Torrence* v. *The City of Aurora*, yet is it such a road as is described in the 2d, 3d and 6th paragraphs of the answer? Is such a road a road within the meaning of that section?

It seems to us such an idea would not occur to one upon reading that section, and it requires a very liberal interpretation and broad construction of that section to include such a road within its terms.

It seems to us to be inconsistent with the construction put upon such charters, so to construe this 18th section of the charter of the city of *Aurora*.

We insist that the road described and set out in the 2d, 3d and 6th paragraphs of the defendant's answer, is not such a road as is contemplated in and by the 18th section of the city charter.

The next question which we desire to consider, is that relating to the 4th paragraph of the answer. That paragraph is in these words:

"And for further answer herein, the said city of *Aurora* says that a majority of the qualified voters of said city did not at any annual election held in said city, prior to the time when said subscription was made by said city council, express upon their tickets that they were in favor of the subscription, by the city council of said city, of 50,000 dollars of the capital stock of the *Ohio and Mississippi R. R. Co.*, or of any amount of stock whatever in said company. And the defendants aver that the said *Charles W. West*, one of said plaintiffs,

The City of Aurora *v*. West.

was at and before the time said subscription was made, and said bonds were issued and delivered to said company, a director in said company. Wherefore the said city of *Aurora* says, that the subscription made as aforesaid by the said city council, as set forth in said plaintiffs' complaint, was unauthorized and void, and the bonds and coupons issued thereon as aforesaid, unauthorized and void."

The demurrer admits these facts, and the sustaining it is a decision of the Court, that these facts are not a defence.

Upon this record, then, it had been determined before the trial that the defendants could not rely upon that paragraph for a defence, and they were not, therefore, bound to prepare to prove them, and were not permitted to prove them. The record, by the action of the plaintiffs below, did not permit the defendants to rely upon this question alone, and made the proof of these facts, as a defence, unnecessary and improper; and the question is, whether the facts set out in that paragraph are a defence?

Now, it is quite clear that the 18th section of the city charter gives no unconditional power, or unlimited power, upon the subject; and it is perhaps, somewhat difficult to see upon what ground it is that the Court sustained this demurrer. It could have been only on one of the following grounds that any conceivable argument could be made to sustain the action of the Court:

1. That the vote of the people was not a condition precedent, absolutely necessary before the city could take such stock and issue such bonds.

2. That the plaintiffs are *bona fide* purchasers in some such way that this defence can not be set up by the city against them.

3. That the defendants are estopped from setting up such defence, or,

4. That a vote of the majority of those voting, is all that is required by the charter to raise the power.

Neither of these positions is sound.

That the city had no power to take such stock until after a vote of the people was taken, and a majority of the qualified voters had signified their assent thereto, by expressing upon their tickets, at an annual election, that they were in favor of such subscription, is

expressed as clearly as it possibly can be, in the 18th section of the city charter.

The section begins in these words:

"The said city council, whenever a majority of the qualified voters of said city require it, shall have power," &c.

This is clear, but the proviso is still more clear:

"*Provided*, That no such stock shall be subscribed on the part of the city, until a majority of the qualified voters thereof have signified their assent thereto by expressing upon their tickets, at an annual election, that they are in favor of the subscription of such stock by the city council," &c.

Then immediately follows the power to issue bonds to raise funds for the payment of such stock.

It was only for the payment of such stock, that the council could issue bonds, and nothing can be more clear than that this issue of bonds depended upon the subscription of stock made in accordance with the 18th section of the charter; and for this a majority of the qualified voters of the city must have expressed assent thereto upon their tickets at an annual election.  *Starin* v. *The Town of Genoa*, 23 N. Y. R. 450; *Gould* v. *The Town of Sterling*, 23 N. Y. R. 459.

These things are indispensably necessary for the taking of such stock:

1. The majority of the qualified voters must express this assent.

2. It must be at an annual election, when the whole vote was more likely to be called out than at any special election.

3. The assent must be expressed upon the tickets.  It must be in writing or printing.

All which provisions were exceedingly proper, and if they are not a condition precedent, it is difficult to see by what language such a condition could be created.

Were the plaintiffs in any better position than the *Ohio and Mississippi R. R. Co.*, to whom these bonds were given for the stock?

1. The bonds are made payable to the *Ohio and Mississippi R. R. Co.* or bearer.

This company was certainly bound to know that the city had no

power to take this stock, or to issue the bonds, unless the majority of the qualified voters had thus expressed their assent thereto. They were also bound to know that the city was to sell the bonds to raise funds to pay for stock; for it may be that the bonds, having a long time to run, at six per cent., would sell for more than their face. They were to be sold to raise funds to pay for the stock, not handed over to the railroad company, at par, in payment of the stock. The citizens might have voted to take the stock, upon the idea that they could sell the bonds at par or above par, thereby furnishing the railroad company with that much money. Whereas, they might not have been willing to take stock and give their bonds therefor, if the railroad company was to sell them and get but 77½ cents on the dollar for the same. See *Gould* v. *The Town of Sterling*, 23 N. Y. R. 459.

Now, these bonds were issued by a municipal corporation, having no general powers whatsoever, as an individual has, and being strictly confined to the powers granted. See *Gould* v. *The Town of Sterling*, *supra.*

This corporation exists by the laws of *Indiana*, and has no existence or powers out of or beyond that State. *Wheeler* v. *The Ohio and Mississippi R. R. Co.*, 1 Black. 296.

These bonds were executed in *Aurora*. They are payable to an *Indiana* corporation. They purport so to be. They bear this upon their face. They are therefore *Indiana* contracts, not only because executed in that State, but because executed by a municipal corporation of that State having no existence or powers out of such State.

2. Neither the bonds nor the coupons are bills of exchange. They are not promissory notes even. Nor are they payable at any bank within the State of *Indiana*.

They could not therefore be assigned and transferred, so as to cut off any defences which the city had to the same.

This is quite clear, and follows directly from the statute of *Indiana*. 3d section of the act of *May* 12th, 1852; 1st R. S. 1852, 378.

These bond are governed by the law of *Indiana*. They are made in *Indiana;* that is the *lex loci contractus.* Story on the Conflict of Laws, secs. 297, 298.

The City of Aurora *v*. West.

They are made by a body having no powers out of or beyond that State. *Wheeler* v. *The Ohio and Mississippi R. R. Co.*, 1 Black. 296.

As to certain incidents, the law of *New York* would apply, but as to the nature of the contract, its construction, obligation, legal effect and operation, and as to the defences thereto, certainly, in the *Indiana* courts, these are governed by the law of *Indiana*. Story on the Conflict of Laws, sec. 555; *Cornegie et al.* v. *Morrison et al.*, 2 Met. 396.

3. Counsel for the plaintiffs below seem to be impressed with the idea that it is necessary for them to bring themselves under the law of *New York*, and they plead the law of that State.

We suppose the object is to show that the defences set up, though they might be pleaded against the railroad company, could not be against *West* and *Torrence*. The Court held that they could not.

In this the Court erred, as will appear from several considerations.

1. The laws of *New York*, set out in the complaint, can apply only to, and are intended to apply only to, notes made in *New York*. They do not apply to these bonds made in *Indiana* by one *Indiana* corporation and payable to another *Indiana* corporation. *Steamer J. P. Tweed* v. *Richard*, 9 Ind. 527; *Farnham* v. *The Blackstone Canal Co.*, 2 Sumn. 62; *De Witt* v. *Bennett*, 3 Barb. R. 96; *Miller* v. *Swan*, 27 Maine 521, 522; *Daniels* v. *Stevens, Lessee*, 19 Ohio 243; *Champion* v. *Jantzen*, 16 Ohio 97; *Steadman* v. *Patchin*, 34 Barb. R. 222; *Lewis* v. *Turner*, 2 Gibbs 354.

The law upon this subject is thus expressed by Judge *Story:*

"Every legislature, however broad may be its enactments, is supposed to confine them to cases and persons within the reach of its sovereignty.

In a few words, the same principle is well expressed in the case of *Steamer J. P. Tweed* v. *Richard*, 9 Ind. 527.

A careful examination of the law of *New York*, so far as it appears in the complaint, will show this.

The law of *New York* speaks of indorsments, among other contracts. Now it is well settled that the indorsement is governed by the law of the place where made, no matter where the contract is made or is payable. This shows that this law was not intended to cover contracts made in other States. *Dundas* v. *Bowler*, 3 McLean 397;

The City of Aurora *v.* West.

Story on Conflicts of Laws, secs. 314 to 317; *Slocum* v. *Pomeroy*, 6 Cranch 224; *Hick* v. *Brown*, 12 Johns. 142; *Prentis* v. *Savage*, 13 Mass. 24; *Powers* v. *Lynch*, 3 Mass. 80; *Potter* v. *Brown*, 5 East. 130.

This is true as to the drawer. *Hick* v. *Brown*, 12 Johns. 142; Story on Conflict of Laws, 315.

. 2. As to matters which may be set up in defence, these are a part of the remedy and are everywhere exclusively within the jurisdiction of the *lex fori*. Story on Conflict of Laws, sec. 555; *Dakin* v. *Pomeroy*, 9 Gill. 6; *Jones* v. *Jones*, 18 Ala. 251, 252; *Whitttemore* v. *Adams*, 2 Cow. 63; *Potter* v. *Brown*, 5 East. 130.

As a municipal corporation of *Indiana*, the city derives all its existence and powers, and is subject to any liability from the *Indiana* law alone, and can not bind herself or be bound outside of it. *Halstead* v. *The Mayor of New York*, 3 Coms. 433.

When *West* sued the City of *Aurora* in the Courts of *Indiana* upon these bonds, made and executed in *Indiana*, and there delivered to an *Indiana* corporation, surely the law of *Indiana*, as to the matters of defence, is applicable, and not the law of *New York*. As has been stated, these laws of *New York* do not purport to apply to contracts made out of the State; but if they did, they could not hold in the Courts of *Indiana*, to deprive the City of *Aurora* of a defence which by the law of *Indiana* it was entitled to. *Allen* v. *The Merchants' Bank*, 22 Wend. 239, 240. See cases cited above.

3. Foreign laws are matters for pleading and proof, and till the contrary is made to appear by the party relying upon such laws, they are presumed to be the same as the *lex fori*. *Whidden* v. *Seelye*, 40 Maine 354; *Crosier* v. *Hodge*, 3 Louisiana 358; *Legg* v. *Legg*, 8 Mass. 101; *Leavenworth* v. *Brockway*, 2 Hill 202; *Holmes* v. *Brighton*, 10 Wend. 781; *Ward* v. *Morrison*, 25 Vt. 601, *Fauke* v. *Fleming*, 13 Md. 407; *Brown* v. *Gracey*, 16 E. C. L. 467.

Now, from anything in the pleadings and proof, it is not made to appear that the law of *New York* applies to contracts made out of the State, by municipal corporations existing in other States, even though the contracts be payable in *New York*. This does not necessarily appear in anything in the complaint.

The City of Aurora v. West.

And nothing is to be inferred in favor of the pleading of any party. Gould on Pleading, sec. 169, p. 152; *Barr* v. *Hasseldon*, 10 Rich. Cr. 62: *Town of Wertford* v. *Town of Oxford*, 31 Vt. 461.

Much less does it appear in the proof. The proof is simply this, that the plaintiff gave in evidence the statute, which is set out in the plaintiff's complaint.

The Court will bear in mind that the point now under consideration is, whether there is anything in the complaint or in the evidence which should cut off the defences between the City of *Aurora* and the *Ohio and Mississippi Railroad Company* arising under the law of *Indiana*.

4. It is true that the rule, as generally stated, is that the law where the contract is to be performed or is payable, is to govern. This is generally true as to certain incidents of the contracts as against the maker or promissor. Such as the demand, protest, damages, and ordinarily as to the interest. And yet even as to these matters, there is much apparent confusion in the books; the rule is said to be, that as to interest and the consequences of usury, they will be governed by the *lex loci*, or the law where the money is to be paid, as the parties contemplated at the time; that evidence may be given upon this point and that the place where the contract is payable, is not the test. See Story on Conflict of Laws, secs. 297, 298, 299; *DePau* v. *Humphreys*, 21 Martin 1; *Chapman* v. *Robertson*, 6 Paige 634; *Brown* v. *Freeland*, 34 Miss. (5 George) 43, 44; *Russell* v. *Wiggin*, 2 Story 229, 230; *Carnegie* v. *Morrison*, 5 Met. 397 to 401; *Atwater* v. *Rœlofson*, 2 Handy, Sup. Ct. of Cincinnati 28, 29.

The case of *Carnegie* v. *Morrison* is one which illustrates to some extent the remark above made, and shows with what narrow limits the exceptions to the general rule of the *lex loci contractus* are confined. In that case it appeared that *Messrs. Morrison & Co.*, a banking house in *London* and for which *Francis J. Oliver* was general agent in *Boston*, gave (by their said agent) a letter of credit to *John Bradford*, a citizen of *Boston*, in favor of *Messrs. Carnegie & Co.*, of *Gottenburg*, in *Sweden*, which *Bradford* forwarded to said firm in *Sweden*, in payment of a debt which he owed them. In the negotiations between said *Bradford* and *Oliver* in *Boston*, *Bradford* agreed

The City of Aurora *v.* West.

to pay the usual commissions for such letters of credit, and the nature and object of the contract were fully understood between him and *Oliver.* *Carnegie & Co.*, in *Gottenburg*, drew drafts on *Morrison & Co.*, in *London*, in accordance with this arrangement, which not being accepted, suit was brought by *Carnegie & Co.* v. *Morrison & Co.*, in *Boston.* The case presented some of the difficulties which arise as to the law which shall govern.

The Court gave a most able opinion, and decided that in some particulars the laws of *Sweden* and *England* governed, but that the law of *Massachusetts* was the law which should generally apply to the transaction.

Chief Justice *Shaw*, in giving the opinion of the Court, says:

"What, then, is the law of the contract, or in other words, what law determines whether an act done constitutes a contract, and if so, between whom and to what effect? The general rule certainly is, that the *lex loci contractus* determines the nature and legal quality of the act done; whether it constitute a contract; the nature and validity, obligation and legal effect of such contract; and furnishes the rule of construction and interpretation." Page 397.

\*    \*    \*    \*    \*    \*    \*    \*    \*

"That the transaction now in question constituted a good contract to some purpose, and between some parties; that it was made on a good, valuable and adequate consideration, and made in *Massachusetts*, is not contested. Then the rule, *prima facie*, is that the construction and legal effect of this transaction are to be determined by the law of *Massachusetts.* This is the law which must be regarded, in the first instance, in deciding whether the act done constituted a contract, and, if so, between whom and to what effect; and must prevail, unless the case falls within some exception to the general rule; and the question is whether it does." Page 398.

\*    \*    \*    \*    \*    \*    \*    \*    \*

"That some things are referred to foreign laws and usages, in this agreement, is manifest in the agreement itself. The words, 'on the usual terms and conditions,' are obviously of this character. They refer to the laws and usages both of *Sweden* and *England*." Page 399.    \*    \*    \*    \*    \*    \*    \*    \*

"Upon these facts the Court are of opinion that the construction, the obligation, the legal effect and operation of this transaction, are to be governed by the law of *Massachusetts.*" Page 400.

It is quite clear that as to the nature, validity, quality, legal effect, operation and construction of the contract, it must be governed by the *lex loci contractus*, and thus are all the authorities. There is some apparent confusion in the reported cases as to what falls under these terms, but we maintain that, in a case of this character, against a municipal corporation, the right to set up defences as between the original parties, under the law of *Indiana*, is governed by the law and not by the exception.

There is no estoppel by deed in *Indiana*. If there were, it would not apply to a case of this kind, for the bonds are executed by the mayor and clerk of the City of *Aurora*, whose powers depend upon the action of the council; and the powers of the council depend upon the assent of a majority of the qualified voters of the city.

The council, the mayor and clerk, are each and all of them special and limited agents, having but a few powers and they dependant upon this assent. Story on Agency, 126; *Gould* v. *The Town of Sterling*, 23 N. Y. R. 464; *Beck* v. *Allen*, 18 Johns. 366; *Munn* v. *Commission Co.*, 15 Johns. 54.

They have no powers without it, and clearly no powers to estop the citizens who are to bear the burden of taxation which the bonds call for.

They have no power even to assert that the majority of the qualified voters have thus assented, or to enter any such vote upon their records. And they have made no such entry. The entry produced is not that a majority of the qualified voters thus assented, but that a majority of those voting thus assented. And should the Court decide that the latter was equivalent to the former, before the plaintiffs can claim to estop the defendants by the same, they must show that they saw this order and relied on it. *Martin* v. *Angell*, 7 Barb. 409, 410; *McKune* v. *McMichael*, 29 Geo. 313, 314.

Parties dealing with municipal corporations, are bound to inquire into their powers, and take notice of the same. They can not plead ignorance of them. They must show them. Story on Ag., § 133, p. 151;

The City of Aurora *v.* West.

23 N. Y. R. 464; *James* v. *The Cincinnati, Hamilton and Dayton R. R. Co.*, Cin. Law Gazette, for *July* 8, 1858.

In this case they are referred to this 18th section of the charter by the bond itself, and were bound to examine it.

An examination of it would show that the City Council had no power in the premises whatever, unless a majority of the qualified voters of the city had, at an annual election, required them to take such stock and issue the bonds. This being a condition precedent, they must see to it, that it was performed. Clearly the mayor, or clerk, or city council, deriving all their powers from said precedent vote, could not estop the city. They were not acting for or binding themselves, and it would be idle to apply the doctrine of estoppel to a principal, because of the unauthorized acts of an agent. See *Mechanics' Bank* v. *The N. J. & N. H. R. R. Co.*, 3 Kernan 638 to 641, where this is determined in relation to the noted *Schuyler* frauds. See, also, 23 N. Y. R. 464; *Halstead* v. *The Mayor of New York*, 3 Coms. 433.

A man may estop himself, because it would be a fraud in him to do the act, from the doing of which, for that reason, the law estops him. But it is because it would be a fraud committed by him upon the party, that he is estopped. The party setting up the estoppel must rely upon the acts to enable him to insist upon the estoppel. It is solely upon the grounds of fraud that this whole doctrine rests.

The law upon this point is well expressed in the case of *Martin* v. *Angel*, 7 Barb. Sup. Ct. R. 409.

In giving the opinion of the Court in that case, Judge *Marvin* says:

"Such estoppels are applied for the prevention of fraud, and only exist to prevent injury when equity and good conscience require that the party should not be heard to gainsay his acts or declarations by which another person has been influenced in his conduct. (Greenl. Ev., § 207.) To create an estoppel which shall preclude a party from alleging the truth, it must appear, 1. That he has made some declaration, or done some act, inconsistent with the truth, with a design to influence the conduct of another; 2d. That the party alleging the estoppel was ignorant of the truth, and relied upon and acted upon

the faith of such acts or declarations; and, 3d. That an injury will result to him if the other party shall be allowed to gainsay them."

To the same effect are the following cases: 29 Geo. 313, 314; *Cummings* v. *Webster*, 43 Maine 194; *Taylor* v. *Ely*, 25 Com. 257; *White* v. *Langdon*, 30 Vt, 601; *Hill* v. *Epley*, 31 Pa. 334; *Lawrence* v. *Brown*, 1 Coms. 401.

This is very familiar law, and the authorities are numerous. Estoppels are odious in law, and are therefore strictly construed.

"Estoppels must be certain to every intent." 1 Greenl. on Ev., sec. 22; *Browman* v. *Taylor*, 2 Ad. and El. 289.

And estoppels *in pais* are only applied to prevent a fraud, and he who sets them up must show that some act or thing was done, or statement made to him by the party to be estopped, to induce him to act in a given way; that he relied upon such act or statement, and acted upon the faith of its truth, and will be defrauded if the party is permitted to set up the truth. 29 Geo. 313, 316.

If it is alleged that a resolution was passed by the council, he must show that it was presented to or shown him, and that he acted upon the faith of its truth, and must also show that the council had power to estop the city. 29 Geo. 313, 314.

When it is admitted that all power of the city or its council depended upon a given vote, it would be idle to claim that the action of the citizens could be estopped from showing the want of such a vote, by a resolution of the council. No such power exists in the council, much less in the mayor and clerk of the city. 23 N. Y. 464.

This last point was fully discussed in the noted case of *The Merchants' Bank* v. *New York and New Haven R. R. Co.*, 3 Kern. 638, relating to the *Schuyler* fraud. *Schuyler* was transfer agent of said railroad company, and as such had transferred, upon the transfer books of said company, a large amount of spurious stock, and this doctrine of estoppel was insisted upon. The Court says:

"The notion of estoppel, which has been advanced in the argument, not as a distinct ground of liability, but blended with other principles, deserves, by ilself, very little consideration. Every corporate as well as private obligation or instrument undoubtedly contains an express or implied representation of facts, upon the faith of

which innocent parties may deal. If it be a promissory note, value received is a fact expressed or implied; and although the fact may not be so, the maker is bound to pay the obligation in the hands of an innocent third party, not upon any theory of estoppel, but upon principles peculiar to that species of security."

\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*

"Now, by presenting the falsehood alleged in the certificate, and the consequent injury as the ground of the action, a plausible appearance is given to this view of the case. But it is essentially illogical. The falsehood, viewed in this aspect alone, really consists in a want of corporate power to enter into the engagement; and that, instead of being a cause of action, is a serious difficulty to be removed. If an agent, irrespective of all questions arising out of the special limitations of his own authority, as derived from the board of directors, can not bind a corporation, or affect the rights of its genuine stockholders by the terms of an over-issued certificate, there is great difficulty in affirming that the result may be indirectly reached by thus changing the ground of liability."

\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*

"Conceding that *Schuyler's* authority, derived from his appointment as transfer agent by the board of directors, might apparently include his fraudulent acts, the difficulty is only removed one step back. The directors themselves were not the corporation, but its agents only. It may be granted that they wielded all the corporate powers, but among those powers the one in question is no where to be found."

Where all power of the city council depended upon this vote, it is simply absurd to say that the council could bind the citizens by a resolution of their own, that such a vote had been taken. The right to pass any resolution upon the subject depended upon this vote.

Now I can readily admit that if the council had power, by the vote of a majority of the qualified voters of the city, to take the stock, but had neglected some circumstances required in their carrying out the subscription, of a directory nature, and which was not a condition precedent to the very power or authority itself in the premises, or had done such thing irregularly, that the city might be estopped from

The City of Aurora *v.* West.

setting up the want of the formality or regularity of their proceedings. The distinction is between a condition precedent to any power in the premises whatsoever, and some want of regularity in carrying out the power after it has arisen and become vested.

This distinction is well recognized and often acted upon by judicial tribunals.

This is well expressed in the case of *James* v. *The Cincinnati, Hamilton and Dayton R. R. Co.*, in which case Judge *Gholson* gave a long and learned opinion.

This is part of the syllabus drawn up by himself:

"Powers conferred upon corporations are of two descriptions; some are general, others special and limited. Some have reference to the mode in which acts are to be done, and are merely directory; others are in the nature of a limitation of power or a condition precedent. Third persons, acting in good faith, are not usually to be affected by an excess or violation of the former, on the part of the company; but of the latter, they are. The act itself must be regarded as illegal, and knowledge is presumed."

This distinction has often been expressed and acted upon in a variety of ways. Among other cases and instances of it, see *Pearce* v. *The Mad. and Ind. R. R. Co.*, et al., 21 How. 443; *S. J. Railway* v. *G. N. Railway*, 9 Exch. 84; *Bargate* v. *Shortridge*, 31 Eng. L. & Eq. 53; *Beach* v. *Fulton Bank*, 3 Wend. 583; *Mayor of Norwich* v. *Norfolk R. R. Co.*, 4 Ell. & B. 418, 419; *E. A. Railway* v. *E. C. Railway Co.*, 73 Eng. C. L. 812; *Kearney* v. *Andrews*, 2 Stock. Ch. 74; *State* v. *Porter*, 7 Ind. 206; *Pond* v. *Negus*, 3 Mass. 232; *Marchant* v. *Langworth*, 6 Hill 647; *Ex. Parte Heath* v. *Roome*, 3 Hill 47; *Colt* v. *Eves*, 12 Coms. 254-5; *Stilker* v. *Kelley*, 7 Hill 24; *Hooker* v. *Young*, 5 Con. 270; Smith on State Const. 784, *et seq.*

They have had no power given them to estop, or act at all, until a majority of the qualified voters of the city have assented thereto. This is a condition precedent to any power whatever upon the subject.

In this connection we desire to say a few words in addition to what has been heretofore said, in reference to two cases determined in the Supreme Court of the United States. They are *Bissell* v. *The City of Jeffersonville*, 24 How. 268; *Aspinwall* v. *Knox Co.*, Com. 21 How. 541.

The City of Aurora *v.* West.

Although some of the remarks in these cases may seem to be at variance with the two cases above referred to, from the 23d volume of the N. Y. R., yet when they are carefully examined, it will be found that they are not in point.

The questions involved called for no such general remarks as were made, and they did not embrace the points now before the Court.

In the case of *Bissell* v. *The City of Jeffersonville*, an act of the Legislature of *Indiana*, had authorized its council to confirm the subscription, which it had done; and this is really the turning point of the case. It is repeatedly mentioned, in the opinion of the Court. See pp. 291, 295, 297, 298.

In this case it also appeared that evidence of the required vote and of a confirmation of the subscription under the statute, were exhibited to the plaintiff, by the city officers having power to sell the bonds, when he purchased the bonds, and that he bought upon a belief of the truth of these papers. Pp. 292, 299. There was nothing of the kind in the case before the Court.

The case of *Aspinwall* v. *The Commissioners of Knox Co.*, was one not relating to the power of the commissioners, but to the regularity of the notice, and that notice was of a directory character, and not a condition precedent.

The question raised in this case was not at all involved in any way. There was no doubt that the people had voted for the subscription. This was not denied. The objection was to the regularity of the notice only, and upon the well settled principle heretofore referred to, the Court held that it could not be raised at so late a time and in such a way. In each of these cases, something is said as to the power of the commissioners in the one case, and of the council in the other, to pass upon this question under the authority given to confirm the subscription. In all of which particulars, and others, the cases are clearly distinguishable from that now before this Court, and from the *New York* cases above referred to.

As bearing upon the question of power in the city of *Aurora*, and upon the estoppel, we refer the Court to the case of *Mitchell* v. *The Rome R. R. Co.*, 17 Geor. 589.

In that case the Court says:

"Doubtless, if this payment were a condition precedent to organization, the acts done by the company, unless this condition had been complied with, would be void; and void, notwithstanding any subscriber might have participated in them and given them his sanction, or might have taken part in any pretended organization. To this effect is the decision of this Court in *Napier et al.* v. *Poe et al.*, 12 Geor. R. 184, a case in which the payment in of a certain per cent. by the subscribers for stock, was a condition precedent to organization or to the right to do business."

For a case containing some of the distinctions upon this question of estoppel, we will here also refer the Court to the case of *Gardner* v. *Greene*, 5 R. I. 109, 110.

This is from the opinion of the Court in that case:

"Of course, a deed poll can never operate by way of estoppel *by deed*, against the grantee, for the simple reason that his seal is not to it; Co. Lit. 47 *b*, 363 *b;* nor, in consequence, as such an estoppel against the grantor; since, to exist at all, an estoppel of this sort must be mutual and reciprocal. Co. Lit. 352 *a;* *Grant* v. *Wainman*, 3 Bing. N. C. 69; S. C. 32 Eng. C. L. R. 42; *Small* v. *Proctor*, 15 Mass. 495, 499; *Moore* v. *Eastman*, 5 N. H. 490; *Lansing* v. *Montgomery*, 2 Johns. R. 382; *Osterhaut* v. *Shoemaker*, 3 Hill 519; *Sparrow* v. *King*, 1 Comst. (Appeals) R. 248; *Gardner* v. *Sharp*, 4 Wash. C. C. R. 609; *Miles* v. *Miles*, 8 Watts & Serg. 135; *Bolling* v. *Mayor*, 3 Rand. (Va.) R. 463; *Candler* v. *Lansford*, 4 Dev. & Bat. (N. C.) R. 407. It is equally well settled, that an estoppel *in pais* is created by the acceptance of possession under a deed, only when the deed is accepted in one of those relations which imply an obligation to return the possession, and a sort of allegiance to him under whom, or in subjection to whose interests, it is held; such as in the relation of landlord and tenant, trustee and *cestui que trust*, mortgagor and mortgagee. *Per Baldwin, J., Williston* v. *Watson*, 3 Pet. 47, 48; *Blight's Lessee,* v. *Rochester*, 7 Wheat. 548; *Watkins* v. *Holman*, 16 Pet. 53, 54. Even in one of these relations, as of landlord and tenant, it exists only when possession has been received under the lease, and does not continue after the landlord's title has determined, or the tenant has been either actually or constructively evicted. *Doe* v. *Barton*, 11 Ad. &

The City of Aurora *v.* West.

El. 307; S. C. 39 Eng. C. L. R. 99; *Doe* v. *Smith*, 4 M. & S. 347; *Doe* v. *Edwards*, 5 Barn. & Ad. 1065; *Doe* v. *Mills*, 2 Ad. & El. 17; *Doe* v. *Birchmore*, 9 *Id.* 662. It is an extension of such an estoppel quite beyond its reason, to apply it to the ordinary relation of grantor and grantee, where the latter, claiming by virtue of his own purchased right, and having paid his money for his title, is under no obligation whatever to his grantor, or to the widow claiming by virtue of his grantor's seizin, in regard to it. As said by Mr. Justice *Wilde*, (*Small* v. *Proctor*, 15 Mass. 499,) "The grantee may be permitted to show that his grantor was not seized, as is every day permitted in actions of covenant."

Indeed, it would seem little short of an absurdity to hold, that a party receiving possession under a deed is equitably estopped, as long as his possession continues, to deny the seizin of his grantor, because, along with the possession, he took covenants of warranty to guard him, as far as damages might, against the contemplated possibility that his grantor might not ultimately prove to be entitled to that which he affected to convey. And see *Smith* v. *Strong*, 14 Pick. 148; *Barker* v. *Talman*, 2 Metc. 32; *Osterhaut* v. *Shoemaker*, 3 Hill, 519; *Sparrow* v. *Kingman*, 1 Comst. (Appeals) R. 252, 254; *Kenada* v. *Gardner*, 3 Barb. Sup. Ct. R. 589.

This case might be supported by numerous others. It shows within what narrow limits the doctrine of estoppel is confined.

The Court also erred in allowing interest upon these coupons, and especially so in allowing 7 per cent. interest.

This question is raised upon the motion for a new trial, and the exceptions taken to the overruling thereof.

We deny that any interest was due upon these coupons. They are not, and do not purport to be separate and distinct contracts. They purport upon their face to be interest warrants, attached to a bond, which is the principal contract. Though in form a promise to pay, yet they are not executed as separate contracts, but each one purports to be an interest warrant to the bond which is specified in the coupon itself.

They are put in this form, not as separate contracts, but for convenience in collecting the interest. And it has been held that they

could not be sued upon by any party not holding the bond.  *Wright* v. *The Ohio and Mississippi R. R. Co.*, in the Superior Court of *Cincinnati, per Gholson, J.*

Being interest warrants, it is doubtful, to say the least of it, whether in *Indiana*, any recovery could be had upon them by any one not also holding the corresponding bond.  *Comparet* v. *Ewing*, 8 Blackf. 328.

Whether a recovery could be had upon them by a party not holding the corresponding bond is one question.  It is a very different question whether interest is due upon them, as they give notice upon their face that they are themselves the interest upon another contract, and interest upon them would be interest on interest, which would be illegal.  *Niles* v. *The Board, &c.*, 8 Blackf. 158; *Tillcotson* v. *Preston*, 3 Johns. 229; *Williams* v. *H.*, 3 Cow. 87; *Dixon* v. *Parkes*, 1 Esp. 110, 111; Ex Parte Bevan, 9 Ves. 224.

This is the law both of *Indiana* and *New York*.  The law of *England* is the same, and the law of many of the States is also to the same effect.

Now, these coupons are but the interest due from time to time upon the corresponding bonds, and being incidental with the original contract, made in this form to be detached for the convenience of the holder in collecting the interest in a distant city, there can be no interest upon them; that would be compound interest, which is not permitted either in *Indiana* or *New York*.  *Niles* v. *The Board, &c.*, 8 Blackf. 158; *Grimes* v. *Blake*, 16 Ind. 160; *Boyer* v. *Pack*, 2 Denio 108; *Toll.* v. *Hillier*, 11 Paige 231; *Foreman* v. *Foreman*, 17 How. Pr. 257; Ex Parte Bevan, 9 Ves. 223.

Indeed, under the law of *New York*, in which State these coupons and bonds were payable, a person having paid compound interest under an idea of both parties that the interest was properly calculated, may be permitted to recover it back.

It was so held in 1844 by the Supreme Court of *New York* in the case of *Boyer* v. *Pack*, 2 Denio 108.

These decisions in *New York* come down many years since the passage of the act referred to in the complaint, and they show that such is the law of *New York*

The City of Aurora *v.* West.

The law of *New York*, as set out in the complaint, is expressed in the usual language of such laws, the same precisely as that in the *Indiana* act relating to the subject. The fact that these are separate coupons, does not make the contract, in legal. effect, different. The bond itself shows that it is the interest payable annually—nothing more, and the coupons are to the same effect.

Interest upon such coupons, or upon the annual interest falling due, can not be contracted for, even at the time the original contract is made. It is against the policy of the law to permit it. *Niles* v. *The Board*, &c., 8 Blackf. 158; *Mowry* v. *Bishop*, 5 Paige 102; *Van Beuschooten* v. *Lawson*, 6 Johns. Ch. 313, 314; *Toll* v. *Hillier*, 11 Paige 231; *Foreman* v. *Foreman*, 17 How. Pr. 257; *Grimes* v. *Blake*, 16 Ind. 160.

It requires an agreement made in writing, after the interest becomes due, to make it legal.

But if any interest were due and recoverable upon these coupons, the Court erred in allowing 7 per cent. to be recovered. The contract being made in *Indiana*, is governed by *Indiana* law as to its obligation, nature, legal effect, operation, validity and construction. Story on Conflict of Laws, sec. 297.

Whether it draws 6 or 7 per cent. is certainly a matter of legal effect, operation or construction.

But it matters not whether it be governed by the *New York* law or by the law of *Indiana*. If the interest is due at all upon the coupons, it must follow the interest contracted for in the contract itself. This is 6 per cent., which is legal according to the law of *New York*. The incident follows the principal, in law as in logic.

And nothing is clearer than that these coupons are not original contracts in themselves, but are incidental acknowledgments of interest due from time to time upon the principal contract, and put in this form for the convenience of the holder in collecting the interest in *New York*, and as being a good form of receipt, not requiring any indorsement upon the bond. The convenience of this results from the. fact that the bonds are payable at a distance, and run for many years.

The coupon can be forwarded without the bond, and each one operates as a receipt to the party paying, and requires no indorsement upon the bond. Indeed when cut off the presumption is that it is paid, and thus the obligor is protected in that way.

There is no brief for the appellees in the record.