JOHN GREER AND OTHERS, PLAINTIFFS IN ERROR, *v.* S. M. MEZES, MARIA DE LA SOLIDAD ORTEGA DE ARGUELLO, AND JOSE RAMON ARGUELLO.

Where the plaintiffs in ejectment showed a legal title to land in California under a patent from the United States and a survey under their authority, it was proper in the court below to refuse to admit testimony offered by the defendants to show that the survey was incorrect, the defendants claiming under a merely equitable title.

Where the defendants pleaded severally the general issue, it was proper for the court below to instruct the jury to bring in a general verdict against all those who had not shown that they were in possession of separate parcels.

The mode of proceeding by petition does not alter the law of ejectment under the old system of pleading.

THIS case was brought up by writ of error from the Circuit

Court of the United States for the northern district of California.

It was an action of ejectment brought, by way of petition, by the defendants in error against Greer and twenty-nine other persons. The plaintiffs below represented the interests of Arguello, whose title was confirmed by this court in 18 Howard, 539, to that portion of the land described in the petition, bounded as follows, viz: on the south by the Arrogo or creek of San Francisquito, on the north by the creek San Mateo, on the east by the estuary or waters of the bay of San Francisco, and on the west by the eastern borders of the valley known as Cañada de Raymundo, said land being of the extent of four leagues in length and one in breadth, be the same more or less.

A survey of this land was made by John C. Hays, United States surveyor general for California, who returned the field notes with a map to the Commissioner of the General Land Office on the 19th of December, 1856. This survey and map included 35,240 acres.

A patent was issued on the 2d of October, 1857, which followed the field notes, and granted the land as follows:

To Maria de la Solidad Ortega de Arguello, one equal undivided half.

To Jose Ramon Arguello, one equal undivided fourth part.

To Luis Antonio Arguello, one equal undivided tenth part

To S. M. Mezes, three equal undivided twentieth parts thereof; but with the stipulation that in virtue of the fifteenth section of 3d March, 1851, the confirmation of this said claim and this patent shall not affect the rights of third persons.

At July term, 1858, of the Circuit Court of the United States for the districts of California, in and for the northern district, this ejectment was brought, at first in the name of Mezes alone, the bill having been filed on March 16, 1858. Pleas were put in to the jurisdiction upon the ground that Mezes was not an alien nor a subject of the Queen of Spain, as he had alleged. Afterwards, in October, 1858, an amended bill was filed, making parties of those persons who are named as defendants in

error in the caption of this report, Luis Antonio Arguello having conveyed his interest to Mezes.

In November, 1858, the cause came on for trial. The principal points in that court and in this arose upon the rulings of the court upon the admission of evidence, under the following circumstances:

John Greer, the principal defendant, had married Maria Louisa, the widow of John Coppinger, and in behalf of his wife and of Manuela Coppinger, an infant child of John, had petitioned for the confirmation of a grant alleged to have been made to John Coppinger by Alvarado on 3d of August, 1840, containing twenty-seven square miles of territory.

On 23d November, 1853, the board of commissioners decided that the claim was valid, and decreed that it should be confirmed.

On the 8th of January, 1855, *Mr. Cushing*, Attorney General, filed a notice that the United States would appeal to the District Court of the United States for the northern district of California.

On the 14th January, 1856, the district judge, Ogden Hoffman, decreed that said decision be and the same is hereby affirmed. And it is further ordered, adjudged, and decreed, that the claim of the appellees be confirmed to the tract of land known as "Cañada de Raymundo," being the same now occupied by the said appellees, and bounded and described as follows, viz: bordering to the west on the Sierra Morena, to the east on the rancho de las Pulgas, to the south on the rancho of Maximo Martinez, and to the north on the Great Lagune. Reference for further description to be had to a map, which is made a part of document marked C, and filed in this case.

In November, 1856, in consequence of a notice by the Attorney General that no appeal to the Supreme Court of the United States would be taken, Judge Hoffman decreed that the claimants have leave to proceed under the decree of that court heretofore rendered in their favor as on final decree.

What other steps were taken by Greer, the record did not show. As his title stood at the time of the trial, it appeared to be an equitable title only, the decision of the board of com-

*Greer ét al.* v. *Mezes et al.*

missioners not passing the legal title, and there having been no subsequent survey and patent.

Upon the trial below, the plaintiffs made out their title by the patent and map, and proved that some of the defendants were residing upon the land.

The defendants then offered to prove that the grant to Coppinger, and the confirmation thereof, embraced all the land in controversy in this suit, and that all the defendants' at the time of the institution of this suit were in possession of such portions of the premises, as were occupied by them under the grant to Coppinger, and deriving title therefrom.

The defendants further offered to prove that the survey and patent given in evidence by the plaintiffs were erroneous in respect to the location of the western line of the Las Pulgas ranch, and that if said line was properly located, according to the grant to Luis Arguello's heirs, or according to the decree of the Supreme Court of the United States confirming said claim, it would not embrace any of the land occupied by the defendants, or either of them.

The defendants further offered to prove that the western line of the Las Pulgas ranch, as established by the patent and survey given in evidence by the plaintiffs, does not stop at the eastern borders of the Cañada de Raymundo, but embraces a large portion of the level valley land of the said cañada, occupied and held by the defendants, or some of them, under the grant to Coppinger.

All of which proof, both oral and documentary, was objected to by the plaintiffs, and ruled out by the court as incompetent, to which ruling the defendants duly excepted at the time.

The statement of this case has occupied so much room that but little space is left for the arguments of counsel in this court.

It was argued by *Mr. Blair*, upon a brief filed by himself and *Mr. Crockett*, for the plaintiffs in error, and by *Mr. Janin* for the defendants. The points given below were amply illustrated, but there is not room to insert any more.

The counsel for the plaintiffs in error made, amongst others, the following points:

1. The Coppinger grant is by metes and bounds, and not by quantity, and is without the usual provision as to the surplus. No survey was necessary to locate and segregate the land. A grant or confirmation of a specific parcel of land conveys the title *proprio vigore*, without a survey.

> Guitard v. Stoddard, 16 How., 494.
> Bissell v. Penrose, 8 How., 317.
> Stanford v. Taylor, 18 How., 409.
> United States v. Sutherland, 19 How., 363.

2. The grant to Coppinger conveyed the legal and not a mere equitable title. It purports to convey the property in fee, and was issued by the Governor, who had the lawful authority to grant lands. On its face it is designated as a "patent," and purports to be final and definitive. The fact that it is made subject to the approval of the Departmental Assembly does not impair its effect as a valid legal title. This created only a defeasance, by which the title might be defeated, if the Departmental Assembly *refused* to ratify the grant; but until such refusal, the legal title was in the grantee. Even this refusal did not impair the title, unless the supreme Government ratified the action of the Assembly.

> Ferris v. Coover, 10 California R., 589.

3. If the title was before only equitable, the final confirmation by metes and bounds has converted it into a complete legal title, conclusive as against the United States; and after such confirmation there was no title, either legal or equitable, in the United States, which it could convey by patent to a third person. The United States was estopped by the confirmation to deny that the title was in the claimant, and being thus estopped by the record, it could convey no title to another.

> Lafayette's Heirs v. Kenton, 18 How., 197.
> Guitard v. Stoddard, 16 How., 494.
> Stanford v. Taylor, 18 How., 409.
> Ledoux v. Black, 18 How., 473.
> Roche v. Jones, 9 How., 155.
> Grignon v. Astor, 2 How., 319.

Chouteau *v.* Eckhart, 2 How., 344.
Strother *v.* Lucas, 12 Pet., 410.
Same, 3 Dallas, 456.
Harrold *v.* Bailey, 9 Missouri R., 323.

*Mr. Janin*, after stating the case, said:

Under these circumstances, it is clear that the defendants in error have the legal title to the land in dispute, whereas the plaintiffs in error have only an equitable claim, such as cannot be offered in opposition to a legal title in an action of ejectment.

I. By the uniform legislation of Congress, the title passed out of the Government only by the patent. In respect to California land claims, this is specially provided for by the 8th section of the act of March 3, 1851, entitled "An act to ascertain and settle the private land claims in the State of California." (9 Stat. at Large, 632.)

In Hooper *v.* Scheimer, 23 How., 249, the court say: "This court held, in the case of Bagnell *v.* Broderick, 13 Pet., 450, that Congress had the sole power to declare the dignity and effect of a patent issuing from the United States; that a patent carries the fee, and is the best title known to a court of law. Such is the settled doctrine of this court." Until the issuance of the patent the fee is in the Government, which passes by the patent to the grantee, and he is entitled to recover the possession in ejectment. 13 Pet., 450.

II. The title of the plaintiffs in error is an equitable and not a legal title. It was a grant by the Governor, subject to the approbation of the Departmental Assembly, which it never received. It was unaccompanied by judicial possession, and never surveyed, so far as the record enables us to judge.

Mr. Justice GRIER delivered the opinion of the court.

The defendants in error are the owners of the tract of land called Las Pulgas, the title to which was confirmed to the heirs of Arguello by this court, (18 How., 539.) This action of ejectment was brought by them against Greer and a number of others, now plaintiffs in error. The defendants pleade~¹

severally the general issue, but no one of them took defence specially for any definite part of the land claimed in the writ, or made a disclaimer as to any portion of it. The plaintiffs gave in evidence the survey and patent of the Las Pulgas tract, and proved the defendants to be in possession within its boundaries. Their Mexican title was dated in 1835, and had the approbation of the Departmental Assembly, preceded and followed by possession.

Their grant, as confirmed by this court, is bounded on the north by the arroyo of San Francisquito, on the south by that of St. Mateo, on the east by the estuary, and on the west by the cañada or valley of Raymundo, "being four leagues in length and *one in breadth*." The plaintiffs having shown a complete legal title to the land in dispute, were entitled to a verdict, unless the defendants could show a better.

They claimed under a grant to Juan Coppinger, dated in 1840, for the valley of Raymundo, specifying nothing as to quantity, but describing it as bounded on the east by the rancho of Las Pulgas, and on the west by the Sierra Morena, south by rancho of Martinez, and north by the lagune. The espediente provides, that "the judge who shall deliver possession of the land shall have it measured according to the ordinance, specifying the amount of sitios it contains."

This grant had never received the sanction of the Departmental Assembly, nor had possession ever been delivered, or any precise boundaries ascertained by survey; and although confirmed as a valid, equitable claim by the District Court of California, it has never been surveyed, nor had a patent been issued for it under the decree of confirmation. The claim of defendants to the land is therefore not yet completed into a legal title. Its boundaries and quantity still remain uncertain and undefined. The Sierra Morena may be sufficiently definite as the boundary of a State or kingdom, or of a valley, but is certainly a very vague and uncertain line for a survey of land. The eastern boundary called also for the rancho of Las Pulgas; this was also uncertain till the western line of Las Pulgas was correctly surveyed. Coppinger's grant, calling for land outside of the Pulgas grant, and to be bounded by

it, could have no possible interference or claim to land within it. Hence, the defendants could resort to no other defence than to offer proof that the survey and patent of Las Pulgas were erroneous as regarded the location of the western line, because it embraces a portion of the level land in the cañada or valley Raymundo, which is the call of its western boundary.

It is the refusal of the court to admit testimony for that purpose which is now alleged as error.

The testimony offered might well have been rejected as irrelevant, for it does not follow, that if the western line of Las Pulgas, as run by the surveyor general, included level land in the valley, that it was at all incorrect. The western boundary line of Las Pulgas, as adjudged by the decree of this court, had two several points of description to fix its location; one uncertain and vague, the other admitting of mathematical certainty. The call of the Cañada Raymundo on the west is as vague as that for the Sierra Morena, a chain of mountains. But the breadth of one league from the estuary or bay was a certain and definite boundary on the east, and showed conclusively the precise location of the line. Las Pulgas could claim to extend but a league west, whether that reached to the hills on the east of the valley or not, and was entitled to have the league in breadth, whether it carried the western line over the hills or not. Coppinger's grant can claim only what is left after satisfying Las Pulgas, which calls for a certain quantity and a certain boundary. There was no offer to prove that the survey of Las Pulgas was extended beyond such limit.

The court below refused to admit the testimony, not for its irrelevancy, but its incompetency; because the defendants, claiming under a merely equitable title, having neither survey nor patent, were not in a condition to dispute in a court of law the correctness of the survey made by the public officer or resist the plaintiff's perfect legal title.

The fact and the conclusion of the court from it are undoubtedly correct. It is well settled that both plaintiff and defendant must produce a strictly legal title, whether it be in fee or as lessee for years.

The plaintiff had shown a complete legal title; the defendant had not, for the reasons already stated.

The act of 3d March, 1851, c. 41, section 13, makes it the duty of the surveyor general to cause all private claims which shall be confirmed to be surveyed, and "to decide between the parties with regard to all such confirmed claims as may conflict or in any manner interfere." It is true this may not preclude a legal investigation of the subject by the proper judicial tribunal. In this case there can be no conflict of title as between Las Pulgas and the later grant to Coppinger, which calls for it as a boundary. The survey is conclusive evidence as to the precise location of the western line of Pulgas, as between these parties in this suit. If Coppinger and those claiming under him charge that this line has not been properly established, either by mistake or fraud, they might have had a remedy under the thirteenth section of the act, and may possibly yet have it by filing a bill in chancery. But in this action of ejectment, the defendants cannot call upon a jury at their discretion to alter a boundary line which has been legally established by the public officer specially intrusted with this duty.

The only other exception is, to the following instruction of the court as to the form of the verdict: "That they should find a separate verdict against such of the defendants as were proved to have been in possession, at the commencement of the suit, of separate distinct parcels of the said land held in severalty, and that the jury might find a general verdict against all the other defendants who were proved or admitted to have been, at the commencement of the suit, in possession of some portion or portions of the premises in controversy, the limits or boundaries of whose possessions were not defined by the proof; and this, whether such possessions and occupation were joint or several."

We can perceive no error in this instruction. Although the Circuit Court may have adopted the mode of instituting the action of ejectment by petition and summons, instead of the old fiction of lease, entry, and ouster, it is still governed by the principles of pleading and practice which have been estab-

lished by courts of common law. The hybrid mixture of civil and common-law pleadings and practice introduced by State codes cannot be transplanted into the courts of the United States.

In the action of ejectment, a plaintiff will not be allowed to join in one suit several and distinct parcels, tenements, or tracts of land, in possession of several defendants, each claiming for himself. But he is not bound to bring a separate action against several trespassers on his single, separate, and distinct tenement or parcel of land. As to him they are all trespassers, and he cannot know how they claim, whether jointly or severally; or if severally, how much each one claims; nor is it necessary to make such proof in order to support his action. Each defendant has a right to take defence specially for such portion of the land as he claims, and by doing so he necessarily disclaims any title to the residue of the land described in the declaration; and if on the trial he succeeds in establishing his title to so much of it as he has taken defence for, and in showing that he was not in possession of any of the remainder disclaimed, he will be entitled to a verdict. He may also demand a separate trial, and that his case be not complicated or impeded by the issues made with others, or himself made liable for costs unconnected with his separate litigation.

If he pleads nothing but the general issue, and is found in possession of any part of the land demanded, he is considered as taking defence for the whole. How can he call on the plaintiffs to prove how much he claims, or the jury to find a separate verdict as to his separate holding, when he will neither by his pleading nor evidence signify how much he claims? This was a fact known only to himself, and one with which the plaintiff had no concern and the jury no knowledge. If a general verdict leaves each one liable for all the costs, it is a necessary consequence of their own conduct, and no one has a right to complain.

In the case of McGarvey v. Little et al., (not yet reported,) when the same objection was made to the charge of the court, the Supreme Court of California overruled it, and held "that

the defendants being in possession, and there being no proof of the particular portions which they severally occupied or claimed, there was no error in refusing to direct the jury to bring in a separate verdict as to each."

The judgment of the Circuit Court is therefore affirmed, with costs.