CREAGER et al. v. BEAMER SYNDICATE et al. (No. 7191.)

(Court of Civil Appeals of Texas. San Antonio. Jan. 14, 1925. Rehearing Denied May 27, 1925.)

1. Judgment ⟨⟩252(1)—Trespass to try title ⟨⟩35(1)—In action for trespass to try title, plaintiffs must be confined to title pleaded and relief sought.

In action for trespass to try title, plaintiffs must be confined to title pleaded by them and to relief sought.

2. Trespass to try title ⟨⟩32 — Complainant may set out facts, especially of equitable nature, to aid recovery of additional relief in the alternative.

In actions of trespass to try title, which are purely possessory, complainant may set out facts, especially of equitable nature, to aid his recovery of additional relief in the alternative.

3. Mortgages ⟨⟩261 — Purchaser of vendor's notes having knowledge of agreement between vendor of land and subsequent purchaser took subject to agreement.

Where purchaser of vendor's notes, secured by deeds of trust, took notes with knowledge of agreement between vendor and syndicate, which was subsequent purchaser from vendee, that syndicate had assumed notes and made substantial payments thereon under agreement that foreclosure sale under trust deeds would be had merely to foreclose original vendee's interest, and that syndicate would bid in property on which its payment to vendor would be credited, held, that purchaser took subject to rights of syndicate under agreement which gave it at least equitable title, and in purchasing premises at foreclosure sale acquired title as trustee for syndicate subject to his right to payment of notes.

4. Tender ⟨⟩16(2)—Payment or tender need not be made when party entitled thereto absolutely declines to receive it.

Payment or tender need not be made when party entitled thereto absolutely declines to receive it.

5. Frauds, statute of ⟨⟩118(3) — Agreement, evidenced by letters between vendor and purchaser from vendee, held sufficient contract in writing.

Agreement, evidenced by letters between vendor and purchaser from vendee relating to foreclosure of original vendee's interest by trust sale, held to constitute sufficient contract in writing.

6. Vendor and purchaser ⟨⟩257 — Vendor on credit held to have superior title as against purchaser who simultaneously conveyed in trust to secure obligations.

Where syndicate conveyed property on credit to B., who simultaneously executed and delivered deed of trust conveying property to trustee to secure payment of obligations set forth in deed of trust, held, that syndicate had superior title to land as against B. even if sale by trustee was void.

7. Mortgages ⟨⟩342—Evidence held to warrant finding that trustee refused to act, and appointment of substitute trustee was authorized.

Evidence held to warrant finding that trustee refused to act, and appointment of substitute trustee was authorized.

8. Courts ⟨⟩493(3)—State court's jurisdiction of litigation involving title to land held not ousted by appointment of receivers by federal court.

Where action involving title to land was pending in state court when receivers of property were appointed by federal court, jurisdiction of state court was not ousted, in absence of order of sale attempting to oust receivers from possession of land without consent of federal court under Judicial Code U. S. § 66 (U. S. Comp. St. § 1048).

9. Parties ⟨⟩26—All parties having any interest in land involved in litigation to determine title held properly joined as defendants.

In action, involving title to land, between purchaser from original vendee and purchaser of vendor's notes, who took notes with knowledge of agreement between original vendor and subsequent purchaser, held, subsequent purchasers of portions of tract claimed to be innocent purchasers, assignees of notes of such purchasers, corporation alleged to be principal of purchaser of vendor's notes, and receivers appointed by federal courts were properly joined as defendants.

10. Mortgages ⟨⟩280(4)—Purchasers' assumption of outstanding vendor's notes held to create promise running to holder of notes and not to maker.

Purchasers' assumption of outstanding vendor's notes held to create promise running to holder of notes and not to maker.

11. Mortgages ⟨⟩261—Purchaser of vendor's notes, having notice of agreement between his assignor and vendee of premises, held bound thereby.

Purchaser of notes secured by deeds of trust, having notice of agreement between vendor and vendee's purchaser relating to foreclosure of original vendee's interest, held bound thereby.

---

⟨⟩For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**12. Lis pendens ⊙⟹26(1)—Plaintiffs held not required to make any payments to purchasers after lis pendens filed as condition precedent to maintaining suit involving title.**

Under Rev. St. arts. 6837, 6839, 6840, where lis pendens in action involving title to tract of land was filed before sale of portions of tract were made, plaintiffs were not required to make any payments to such purchasers as condition precedent to maintaining suit.

**13. Lis pendens ⊙⟹1, 18—Is purely statutory; date of notice is date of filing.**

Present law of lis pendens is purely statutory, and under Rev. St. arts. 6837, 6839, 6840, date of notice given thereby is date of filing with clerk of county court.

**14. Liens ⊙⟹1 — Lienholder in possession of realty cannot require owner to pay lien, unless he obtained possession lawfully and not in violation of real owners' rights.**

Lienholder in possession of realty cannot require owner to repay amount paid to discharge lien, unless he obtained possession lawfully and not in violation of, and antagonistic to, real owners' rights.

Appeal from District Court, Hidalgo County; L. J. Polk.

Suit by the American Rio Grande Land & Irrigation Company against the Beamer Syndicate and others, in which named defendant filed cross-action against W. E. Stewart, who filed a cross-action against named defendant, plaintiff, and others. After judgment of dismissal as to plaintiff was rendered, judgment was rendered in favor of Beamer Syndicate and others, and R. B. Creager, receiver, and others appeal. Affirmed.

Gause & Kirkpatrick, of Mercedes, McDaniel & Bounds, of McAllen, Wm. S. West, of Brownsville, Kennerly, Williams, Lee & Hill, and Irl F. Kennerly, all of Houston, Bennett & Anderson, of Mercedes, and George A. Hill, Jr., of Houston, for appellants.

W. L. Dawson, of Mission, and Don A. Bliss, of San Antonio, for appellees.

COBBS, J. This is the same case, with some exceptions, that was heretofore passed upon by this court and reported as Beamer Syndicate v. Stewart, in 236 S. W. 795. We refer to that case and adopt the statement as applicable here, with exceptions that will be noted from time to time distinguishing the case as then on appeal from it as now on appeal. The appellants have joined in a common fight and have answered by exceptions, pleas, and pleas to the jurisdiction of the court, and by general and special answers.

The case was tried by a jury upon special issues, which special issues and the answers thereto are as follows:

"No. 1. Did W. E. Stewart, at the time he purchased from the American Rio Grande Land & Irrigation Company the John T. Beamer notes, have any knowledge or notice of the agreement between the American Rio Grande Land & Irrigation Company and the Beamer Syndicate represented by its trustee, W. D. Price, with reference to the extension of the period for the payment of the indebtedness represented by said John T. Beamer notes? Answer this question 'yes' or 'no,' as you may believe from, and in accordance with, a preponderance of the evidence.

"Answer: Yes.

"No. 2. In purchasing said John T. Beamer notes from the American Rio Grande Land & Irrigation Company, was the said W. E. Stewart acting for the defendant Stewart Farm Mortgage Company? Answer this question 'yes' or 'no,' as you may believe from, and in accordance with, a preponderance of the evidence.

"Answer: Yes.

"No. 3. Was the said W. E. Stewart acting for the defendant Stewart Farm Mortgage Company at the times he disposed of the lands in controversy in this suit? Answer this question 'yes' or 'no,' as you may believe from, and in accordance with, a preponderance of the evidence.

"Answer: Yes.

"No. 4. Did Arthur J. Summers, the substitute trustee named in the execution agreement with reference to the John T. Beamer notes between the American Rio Grande Land & Irrigation Company and John T. Beamer, refuse to act as such substitute trustee? Answer this question 'yes' or 'no,' as you may believe from, and in accordance with, a preponderance of the evidence.

"Answer: Yes."

Some of the questions that arise on this appeal were present in the former appeal (236 S. W. 795) and were there disposed of.

The record and briefs in this case are most voluminous. The transcript contains 1,109 pages, and the statement of facts 2,523 pages. Appellees' brief contains 156 pages, and their supplemental brief 45 pages. Brief of appellants Creager, receiver of Stewart Farm Mortgage Company, Mann, receiver of Stewart Farm Mortgage Company, Stewart Farm Mortgage Company, and W. E. Stewart, contains 136 pages, and their supplemental brief 18 pages. Brief of A. F. Parker, appellant, contains 41 pages. Brief of appellants C. I. Haven and A. R. Haven contains 26 pages. Brief of appellants Orion E. Vivion, A. E. C. Coy, C. S. Osborn, George Waldeck, Arthur A. Simons, F. E. Ludwig, and W. G. Beatty contains 51 pages. We are expected to read the record and briefs of all the parties and to weigh and consider the same, which we have done. Then we are to pass upon every point and write a short opinion. A difficult task is set for us.

Appellants present 47 assignments and 14 lengthy propositions. Appellees present cross-assignments and propositions thereunder.

[1, 2] Appellants' first proposition, that appellees must be confined to the title pleaded and to the relief sought, is sound. But an examination of the lengthy pleading leads us to conclude that it is quite ample to let in the

⊙⟹For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

evidence introduced and. to grant the relief sought. There is no objection, in suits of trespass to try title, which is purely a possessory action, to the complainant setting out facts, especially of an equitable nature, to aid in his recovery of further and additional relief in the alternative.

Appellants' second proposition is so long and involved that it is quite difficult to reduce it to a concrete proposition of law. It is based upon the complaint that the court erred in overruling the general demurrer. And they contend in that proposition that the plea-over of the Beamer Syndicate is predicated upon such rights as were granted to the Beamer Syndicate under the terms of the American Company's letter of June 28, 1919, alleged as an extension agreement, and as such is insufficient because W. E. Stewart and Stewart Farm Mortgage Company were not parties and not liable for the breach of the American Rio Grande Land & Irrigation Company, and such attempt to enforce the contract against them is violation of the statute of frauds.

Again, if the notes were extended thereby to July 31, 1919, the trustee's sale, which the American Company was to cause to take place on August 5, 1919, would have been void because the sale could not have been preceded by legal notices and such agreement would be illegal and unenforceable. Again, the notes were in default, and the trustee was legally bound to sell, which he did, to the highest bidder and to disregard the Beamer Syndicate bid, and if the sale had been made under the Beamer Syndicate bid it would have been illegal and fraudulent, based upon a collusion and fraudulent contract, on which no rights could be founded in favor of the Beamer Syndicate, in law or in equity. This proposition has six distinct subjects—a more multifarious proposition could hardly be imagined.

However, as it presents in the outset propositions in a large way that will dispose of much of the case, we will discuss the entire case so far as the propositions are applicable.

[3] Briefly speaking, the Beamer Syndicate was created by John T. Beamer, who conveyed his title to the lands which he claimed, to own at that time, together with other property, to the Beamer Syndicate and its trustees. When Beamer purchased the land, he gave his notes as part consideration therefor, and the notes were owned by the American Rio Grande Land & Irrigation Company. W. D. Price was the president of the Beamer Syndicate. And when Beamer purchased the land there were a number of outstanding notes and deeds of trust securing them against the land, which were superior to the Beamer Syndicate title; but subsequently these notes were assumed by it. Beamer, having conveyed his title to the Beamer Syndicate, parted with his interest except the right to see that the notes were discharged by his vendees. W. D. Price, the president of the Beamer Syndicate, testified that in order to prevent the sale he went to St. Louis in person and made arrangement to have the foreclosure sale postponed and the indebtedness extended to July 31, 1919. To guarantee the agreement, Mr. Price, for the Beamer Syndicate, deposited $10,000, with the American Rio Grande Land & Irrigation Company, the owner of all the notes outstanding and in controversy.

To make plain the facts pertaining to the extensive agreement, we quote from the testimony of Mr. Price of the Beamer Syndicate, as follows:

"On January 2, 1919, as requested of us, I deposited $10,000 with Mr. J. H. Price, president of the American Rio Grande Land & Irrigation Company. Up until this time, for reason that I will now state, we were unable to make any progress in selling these lands after Mr. Snyder foreclosed on November 5, 1918.

"Our contract was that we were to pay them $100,000 in cash by June 30, 1919, and the remainder in vendees' notes as we sold the land.

"Previous to the time when this land was deeded to Beamer, on May 27, 1918, there had been trust deeds on six or seven hundred acres of it given to H. C. Van Meter, P. F. Krueger, John E. Smith, and W. A. McDonald, to secure notes which they held; and as the interest had not been paid on the notes, these parties holding these trust deeds had decided to foreclose on June 3, 1919, and get the deeds to the property in their names, and to assist us in raising the $100,000 by June 30, 1919, they were willing to allow us to sell the land. We therefore made a contract with the Quimby Land Company of St. Louis to make some sales immediately following the transfer of this property to the parties after they foreclosed on June 3, 1919; these foreclosures took place on that date.

"Early in May, believing it would be difficult for us to raise the entire $100,000 by June 30, I went to St. Louis to see Mr. J. H. Price, president of the American Rio Grande Land & Irrigation Company, if we could get an extension on $30,000 of it until July 31, 1919. Mr. Price said he would talk the matter over with Mr. McMillin, and see if it would be agreeable to him. He did so, and came back and reported that Mr. McMillin said it would be perfectly agreeable, and would grant the extension until July 31st on $30,000.

"In January, 1919, Mr. H. C. Van Meter, one of the trustees, paid the American Rio Grande Land & Irrigation Company $8,000, which was to be applied on the payment of $100,000; and on June 28th I went to St. Louis and deposited $62,000 with Mr. J. H. Price in the office and presence of Mr. George H. Williams, who was the attorney for the American Rio Grande Land & Irrigation Company. This $62,000, with the $8,000, paid by Mr. Van Meter, made up the $70,000 payment required of us by June 30th.

"As the American Rio Grande Land & Irrigation Company wished to co-operate with us and assist us in avoiding the Beamer suit, they agreed, when we paid the remaining $30,000 during July, to foreclose on August 5, 1919, and deed the property to the Beamer Syndicate, or to any one designated by it.

"On July 2d, immediately following June 28th, when I deposited the $62,000 with Mr. J. H. Price, I received a telegram from Mr. Geo. H. Williams, attorney for the American Rio Grande Land & Irrigation Company, to come to St. Louis at once. I did not go then, and on July 5th I received another telegram from him, urging me to come immediately. I wired that I would be there on the 8th of July.

"Mr. Williams' explanation to me why they sold the notes was not at all satisfactory, but the fact remained that the notes were sold, and the next thing to do was to see what could be done to protect the Beamer Syndicate, by having their contract complied with. It was agreed between Mr. Williams and myself that he would wire to Kansas City and have Mr. Stewart come to St. Louis the following morning. I also wired Mr. Alonzo M. Snyder, at Cleveland, the attorney for the Beamer Syndicate, and asked him to be in St. Louis the following morning, which he did. Mr. Stewart was also present the next morning.

"Mr. J. H. Price, Mr. Williams, Mr. Stewart, Mr. Snyder, and myself met in Mr. Williams' office. Mr. Snyder and I insisted that the Beamer Syndicate's contract with the American Rio Grande Land & Irrigation Company be complied with. This Mr. Stewart absolutely refused to do, as he said he purchased the notes for the purpose of selling the land himself; and all efforts on the part of Mr. Snyder and myself to have Mr. Stewart allow the Beamer Syndicate to carry out its contract with the American Rio Grande Land & Irrigation Company were futile. In a few days after that meeting, we learned that Mr. Stewart had posted notices to foreclose on August 5th.

"In the latter part of June, at the request of the Beamer Syndicate, the American Rio Grande Land & Irrigation Company sent some releases of land to the Bank of Chamois, Mo., to be taken up by the Quimby Land Company as per our previous agreement, and as it appeared, when the American Rio Grande Land & Irrigation Company sold the Beamer notes to Mr. Stewart on July 2d, they had overlooked the fact that their releases had been sent by them to that bank, and on July 14th the Quimby Land Company took them up and deposited to the credit of the American Rio Grande Land & Irrigation Company $13,800, which was accepted by the American Rio Grande Land & Irrigation Company and credited to the account of the Beamer Syndicate, which increased the amount paid the American Rio Grande Land & Irrigation Company from $70,000 to $83,000.

"Subsequently, on July 30th, I went to St. Louis and tendered to Mr. J. H. Price, president of the American Rio Grande Land & Irrigation Company, and Mr. Geo. H. Williams, in the office of the latter, $16,200, to complete our payment as we had agreed to by July 31st. This tender Mr. J. H. Price and Mr. Williams refused to accept, giving as their reason that they had sold the notes to Mr. Stewart and could not accept it. They said, however, if it became necessary that they would testify in court that I had made them this tender.

"In all these negotiations just stated, I was acting and conducting said negotiations on behalf of the Beamer Syndicate."

At this point the Beamer Syndicate and its coparties to this suit offered in evidence the two letters above identified by Mr. Price in his deposition, which are as follows:

"Bryan, Williams & Cave, Pierce Building, St. Louis. "January 2, 1919.

"Mr. W. D. Price, Cleveland, Ohio—Dear Sir: You are the chairman of the trustees composing what is known as the Beamer Syndicate, created under that certain agreement between John T. Beamer, on the one part, and yourself and others as trustees on the other part, dated the 15th of June, 1916. As such chairman you have represented that the Beamer Syndicate is the owner of the right, title and interest of John T. Beamer in and to the equity of those certain lands in Hidalgo county, Texas, mentioned and referred to in two certain agreements of extension of the time of payment of vendor's lien notes executed on the 20th of June, 1917, and recorded respectively in (a) volume 63, pages 367-370, Deed Records of Hidalgo County, Texas, and (b) Volume 63, pages 371-373, Deed Records of Hidalgo County, Texas, between John T. Beamer and American Rio Grande Land & Irrigation Co.

"Beamer Syndicate desires to have a further extension of the notes referred to in said extension agreements from the first of January, 1919, to and including the 30th of June, 1919, and have agreed and do agree that if American Rio Grande Land & Irrigation Company will extend the time for the payment of said notes to and including the 30th of June, 1919, the Beamer Syndicate will pay on account of the principal and interest of said notes and on account of the water charges against the lands referred to in said extension agreements a sum equal to $50.00 per acre on all of said lands in cash prior to the 30th of June, 1919, and will pay the entire balance of said principal, interest and water charges by first vendor's lien notes payable in equal parts in one, two, three, four and five years from on and before the 30th of June, 1919, with interest at 6 per cent. thereon, payable semi-annually.

"On behalf of said Beamer Syndicate you have this day paid to American Rio Grande Land & Irrigation Company, the sum of $10,000.00, which will be applied as of this date as a credit on the water charges due and payable against the lands herein referred to.

"As outlined above the proposition of the Beamer Syndicate to the American Rio Grande Land & Irrigation Company is accepted by the latter company.

"Yours very truly,
"American Rio Grande Land & Irrigation Co.,
"By J. H. Price, President."

"St. Louis, Mo., June 28, 1919.

"Mr. W. D. Price, Planters' Hotel—Dear Sir: I acknowledge receipt from you on this date of cashier's check for $62,000.00 payable to you and endorsed to the American Rio Grande Land & Irrigation Company. The American Rio Grande Land & Irrigation Company will deposit this check to its account; it will proceed to foreclose the equity of redemption on the lands known as the West Tract and Townsite Tract of the American Company's lands in Hidalgo county, Texas, under deeds of trust executed by John T. Beamer; it is expected that this sale and foreclosure will take place on the 5th of August, 1919; you and your associates expect to bid for and purchase this land; when you have so purchased the land in your own name or in the name of some nominee the amount of this check, $62,000.00, will be applied on the purchase price, together with such other payments as you shall make prior to the 31st of July, 1919—to a total of not less than $100,000.00. It is my understanding that you desire not to have the $62,000.00 applied on account of John T. Beamer's notes until you or your nominee shall become the purchaser at the foreclosure mentioned above. Yours very truly, J. H. Price, President American Rio Grande Land & Irrigation Company."

"Yes, I have fully stated above all that I did and caused to be done towards complying with the terms of the agreement between the Beamer Syndicate, for which I was acting, and the American Rio Grande Land & Irrigation Company, for which Mr. J. H. Price was acting,

with reference to the said John T. Beamer notes.

"Yes, I am acquainted with Mr. W. E. Stewart. I met him first in Chicago in April, 1918. Yes, I did hear that Mr. Stewart was negotiating with the American Rio Grande Land & Irrigation Company for the Beamer notes during the months from January 1, 1919, until June 30, 1919, when the Beamer Syndicate contract with the American Rio Grande Land & Irrigation Company was in force; first from Mr. J. H. Price on May 27, 1919, and the next time I learned of it through Mr. Geo. H. Williams, attorney for the American Rio Grande Land & Irrigation Company, on July 8th, subsequent to the time they sold the notes to Stewart, when he read me correspondence with Mr. Stewart showing that the latter was negotiating for the notes in question prior to June 30, 1919, and subsequent to January 1, 1919.

"I was present at the courthouse door and in Hidalgo county, Tex., when at the time the sales were made by P. W. Barron, claiming to act as trustee. Besides myself, Mr. F. W. Seabury and Mr. W. E. Stewart were present at that sale. Mr. F. W. Seabury was acting as my attorney in behalf of the Beamer Syndicate at that time and place.

"Yes, there were some negotiations on Monday, August 4, 1919, prior to the sales on Tuesday, between Mr. W. E. Stewart and myself. These negotiations were that I sold for the Beamer Syndicate to Mr. Stewart 153 acres of land out of what is known as the West tract and townsite in Hidalgo county, Tex., for $250 per acre. This sale was made in the presence of Mr. F. W. Seabury, attorney for the Beamer Syndicate. These lands were not offered for sale on Tuesday by Mr. Barron, and therefore were not protested. All the other lands were offered for sale by Mr. Barron on Tuesday, the 5th of August, and I bid in behalf of the Beamer Syndicate on each and every parcel offered for sale, and stated to Mr. Barron, acting trustee, and also in the presence of Mr. Stewart, that we would pay for them, if sold to us at this sale, according to our agreement with the American Rio Grande Land & Irrigation Company.

"As I have stated, as each and every block was offered for sale, I bid on same, and P. W. Barron refused to accept my bids, for the reason that he said we must pay cash to him then and there if we purchased them. This we could not do, as our money was tied up in the hands of the American Rio Grande Land & Irrigation Company. The lands were then sold to W. E. Stewart and made the next bid. Our attorney, Mr. Seabury, protested sale of each and every block sold to Mr. Stewart.

"Yes, we did notify Mr. Stewart and Mr. Barron that under our contract with the American Rio Grande Land & Irrigation Company these lands belonged to the Beamer Syndicate at this sale, and that we were fully prepared to comply with our contract with the American Rio Grande Land & Irrigation Company.

"When we demanded with Mr. Stewart that he go on and carry out the terms of the agreement that had been made between me, acting for the Beamer Syndicate, and J. H. Price, acting for the American Rio Grande Land & Irrigation Company, with reference to the John T. Beamer notes, I know the Beamer Syndicate was able, ready, and willing to carry out that agreement and comply with same in every respect, because I know the money was already deposited to carry out the contract as agreed upon."

We have very fully set out the evidence here, which we copy from appellants' brief, because of the very great insistence on the part of appellants that the Beamer Syndicate has shown no equitable title or right in the matter.

It seems that Beamer, who had sold the land to his syndicate, brought a suit to recover the land and cancel his sale. In order to secure the benefit of its purchase, the syndicate made arrangements to pay off the notes by making certain payments and depositing with the owner and holder of the notes, the American Rio Grande Land & Irrigation Company, $62,000 as the agreement shows. The one thing to be done was that under the trust sale John T. Beamer's claim, if any, was to be foreclosed, and the title under the terms of the sale was to pass direct, under the agreement, to Beamer Syndicate. This was the sole purpose of the sale, and nothing else was to be done by any foreclosure. It was not to be made to collect the debt, for that was agreed upon and arranged. The sale was to be made for but one purpose. No one was, or could be, interested in that sale and foreclosure except Beamer and his syndicate. The holder of the notes had the money, or most of it, in its hands. While it may be excused in the American Rio Grande Land & Irrigation Company, that while it had the $62,000 in its hands, and other consideration, it sold the notes to Stewart, and Stewart took them charged with full notice of the agreement of the American Rio Grande Land & Irrigation Company, because he thereafter advertised and sold the land in derogation of and with the full knowledge of the rights of appellees, and as to them the sale was void, and the title Stewart took was in trust and subject to the rights of appellees, and his holding was that of a trustee, subject to his rights to require payment of the notes.

Appellees made the necessary tenders and offers to pay, continuously, which Stewart refused. To say that appellees had no equity is to set at naught the assumed obligations by Beamer Syndicate upon which it bound itself to pay the holder of the notes, as well as all other considerations shown and payments made, and to ignore wholesome efforts to discharge its obligations by the syndicate, and trample upon promises and written agreements made to discharge lawful debts.

Stewart was an interloper; he stepped in and purchased the notes after he had been notified of the agreements already made, as to their payment, and thereby secured an unfair advantage to foreclose out purchasers who were making an honest effort to secure their bargain.

As to whether, from a moral viewpoint, the

American Rio Grande Land & Irrigation Company, under the circumstances, should have so acted as to allow Stewart to acquire those notes, in view of the American Rio Grande Land & Irrigation Company's obligation—for it was an obligation and not "worthless scraps of paper"—we express no opinion, but it is clear that all Stewart legally got was a standing in the American Company's shoes to carry out its obligations. The law will not permit men to make such solemn agreements and "side step" them by the use of such means employed here. It is mere folly to say that the Beamer Syndicate paid no consideration. It bound itself to pay the notes and made continuous offers and tenders to pay the agreed price and perform all obligations to secure the title to the property. It not only had every right that John T. Beamer had, but paid and obligated itself to pay additional sums. It does not lie in the mouth of appellants to deny the Beamer Syndicate's rights, since Stewart acquired whatever rights he had from the American Rio Grande Land & Irrigation Company with full knowledge. The American Rio Grande Land & Irrigation Company additionally require appellee to personally assume the obligations to pay the notes it had not theretofore assumed, and surely recognized its obligation to appellee, else why did it sell the notes to Stewart impressing upon him full knowledge of all the facts so that Stewart could not be an innocent purchaser.

The American Rio Grande Land & Irrigation Company surely felt bound by its agreement, and but for Stewart's purchase it would have carried it out, as it expected Stewart to do. Then, in good conscience, why should not Stewart be compelled to carry out the agreement? In doing so he would get all his money and his interest, but, of course, not his anticipated gambling prospect; and he would be placed in no worse position than which he occupied when he purchased the notes with notice.

The facts in this case vested in appellee at least an equitable title, and his rights can only be destroyed by the due process of law. This disposes of the first, second, third, fourth, and fifth propositions, which are overruled.

[4] The sixth proposition is based upon an erroneous statement of facts. The pleadings and the evidence both show an offer and a continuous effort to pay the John T. Beamer notes. From the very moment Stewart purchased those notes, the appellee was diligent in the effort to have Stewart carry out his assignor's agreement so that it could perform its part by discharging the obligation. This was pursued and tender made up to and including the date and time the foreclosure sale was made at public outcry.

Appellant seems to overlook the law that it does not require a payment or tender of the money where the party, who is entitled to the same, absolutely declines to receive it, as Stewart did. When Stewart acquired these notes, with notice of appellee's rights, deliberately repudiating them, he became the trustee of appellee by construction. The effort of appellant to deny that the position of trustee was forced on him does not convince us. The position was forced upon him as such trustee, and he thereby owed an obligation and duty to appellee, who had gone to such efforts and expense to secure his rights. We do not think the position in which appellants place appellees, as trying to hold up appellants and get the property without paying one cent for it, is correct. Stewart would be placed in no worse position, by complying with the agreement, he would still hold what his assignor held and what he in fact paid for, and would collect the notes and the interest. In doing that appellees would not be crushed.

We concede as true the statement made by appellants in their brief that "the assignee of the John T. Beamer notes, for, as against W. E. Stewart and those holding under him, the Beamer Syndicate occupy no more favorable position than they would have occupied against the American Company had it retained ownership of the John T. Beamer notes." The whole theory of this case is that the Beamer Syndicate occupies that position. This also disposes of appellants' seventh proposition.

[5] In the eighth proposition appellants say there was no contract in writing as required by the statute of frauds, and that the contract evidenced by the letters of January 2, 1919, and June 28, 1919, are all within the statute of frauds. We do not think the statute of frauds is applicable, for the contract is in writing and all the facts are sufficient to support a valid contract.

[6] We do not think there is any merit in the ninth proposition. John T. Beamer brought a suit to restrain the trustee's sale made on November 5, 1918, by Alonzo M. Snyder by virtue of John T. Beamer's trust then securing the notes in question. No bond was required. Finding that the sale had already been made by Alonzo M. Snyder as trustee, the said John T. Beamer, on November 6, 1918, filed a supplemental petition, asking that the Beamer Syndicate be made a party and that the sale made by the said Snyder as trustee and the conveyance made by him to the Beamer Syndicate be set aside and canceled.

The said John T. Beamer failed to appear at the hearing set by said judge of the Seventy-Ninth judicial district at Hebbronville, as was required by the order. And, later on, on the 25th day of September, 1919, the suit of the said John T. Beamer was dismssed for want of prosecution.

The trustees of the Beamer Syndicate having sold and conveyed unto John T. Beamer the body of land involved in this suit alto-

gether on a credit, and the said John T. Beamer having simultaneously executed and delivered to the trustees of the Beamer Syndicate a deed of trust conveying the entire body of land unto Alonzo M. Snyder as trustee, for the purpose of securing the payment and discharge of the obligations set forth in said deed of trust, the Beamer Syndicate still held the superior title to said land as against John T. Beamer, even if the sale made by Alonzo M. Snyder as trustee had been void.

Appellee's chain of title is as follows:

(a) Conveyances by American Company to John T. Beamer dated in 1912 and 1913, subject to vendor's liens reserved to secure purchase-money notes executed by Beamer.

(b) Deed from John T. Beamer to Beamer Syndicate dated June 15, 1916, subject to said outstanding first lien notes the payment of which the Beamer Syndicate did not assume at the time, but did afterwards assume.

(c) Deed from the Beamer Syndicate to John T. Beamer dated May 27, 1918.

(d) Deed of trust from John T. Beamer to Alonzo M. Snyder, trustee, dated May 27, 1918.

(e) Trustee's deed from Alonzo M. Snyder, trustee, to the Beamer Syndicate, based upon the alleged sale made on November 5, 1919.

[7] Appellant's tenth proposition is that the claims of the Beamer Syndicate were cut off by the foreclosure sale by P. W. Barron, substitute trustee, for Arthur J. Summers, the original trustee. The case was reversed because it was made clear that Summer's resignation was requested by the holders of the notes at that time. However, the jury on this trial, in answer to the fourth special issues, found that he refused to act. Looking to the evidence in the former case, and the evidence here, we perceive no apparent material difference. The jury could very well say, "Yes, he refused to act," after having been requested to do so. That is what is shown in the former appeal, and that is what he says here. He testified that during August, 1919, he was residing in the town of Mercedes, which is in Hidalgo county, Tex., and was the person who was appointed substitute trustee to succeed Duval West, the trustee named in the original deeds of trust executed by John T. Beamer; that he resigned as such substitute trustee about the 1st of July, 1919; that the way he came to resign was that he was asked to resign; that he believed it was Mr. Witmer that had him to sign the instrument of resignation; that Mr. Witmer was the secretary and treasurer of the American Rio Grande Land & Irrigation Company, and that it was in response to his (Witmer's) request that he resigned as such substitute trustee.

[8] Appellants contend that the trial court was without jurisdiction to try this case because the same was filed subsequent to the appointment of the federal court's receiver to take charge of the property.

One receiver was appointed by the federal court sitting at Kansas City in the state of Missouri, and the other in a proceeding instituted in Cameron county, Tex. Appellants do not contend that there is any conflict in the two federal court receivers' orders. Prior to the appointment of the federal court receivers, the subject-matter of this suit was pending in the state court.

Because the amended plea over of the Beamer Syndicate and its trustees making the Stewart Farm Mortgage Company and the two receivers appointed by the two federal courts parties defendant in said plea over was not filed until after said receivers were respectively appointed by said federal courts, and hence the state court was ousted of its prior jurisdiction in respect to the res in controversy, it is claimed the state court's jurisdiction is void, notwithstanding the foreclosure of lands were involved in the state court. W. E. Stewart, the grantor, was a party defendant in the plea over of the Beamer Syndicate long before the orders were made by the federal courts appointing receivers.

The federal court's orders appointed receivers of properties belonging to the Stewart Farm Mortgage Company. Such orders could not destroy appellee's title, and appellees had the right to interplead them in the state court to have the title and the liens adjudicated, but no order of sale could issue to dispossess the receivers, if in possession. To do that the federal court's permission, perhaps, would be required. There is no federal statute, or rule of equity practice, that denies such a right. This right is sustained by virtue of section 66 of the present Judicial Code of the United States (U. S. Comp. St. § 1048). The state court had prime jurisdiction and was the proper court to try out all the issues, because it had before it all the necessary parties before the federal court acted. The action involved litigation in respect to the land, recovery of property, and foreclosure of liens on lands and the other properties, with a fixed jurisdiction and status prior to the receiverships. So, then, it could not affect the receivership until or unless under the judgment an ouster were attempted of the res without consent of the federal court. No appointment of receivers of lands can be valid when made outside of the state.

[9] The questions raised in the thirteenth proposition of misjoinder of parties were disposed of and settled in the former opinion. The interests of the parties named are so interwoven and affected by the litigation as that they are unquestionably proper parties so that one decree may settle all the interests.

The land involved in this suit at the time this suit was filed, and at the time that the original plea over against the original plain-

tiff in the suit and W. E. Stewart was filed, was one entire solid body of land, though it had been platted in subdivisions of about 40 acres each for convenience in order to enable these subdivisions to be sold to purchasers in small tracts. The town of Weslaco was not then in existence, though a certain part of the entire body of land had been designated on the plat as a town site. This entire body of land had been sold and conveyed to the Beamer Syndicate as a part of a much larger body of land by one deed made by John T. Beamer. Subsequently, the entire body of land involved in this suit, containing about 2,000 acres, had been sold by the Beamer Syndicate unto John T. Beamer altogether on a credit and conveyed by one deed. Simultaneously with the execution and delivery of this deed, John T. Beamer had executed and delivered to the Beamer Syndicate a deed of trust conveying the entire body of land involved in this suit unto Alonzo M. Snyder by one deed of trust for the purpose of securing the performance by John T. Beamer of the obligations that he had made and which were set forth in the deed of trust as the purchase price of the land, and this deed of trust contained a power of sale authorizing and requiring Alonzo M. Snyder, the trustee in said deed of trust, upon default by John T. Beamer in performing any of the obligations set forth in said deed of trust, upon the request of the trustees of the Beamer Syndicate, to sell said entire body of land in accordance with the terms of said deed of trust for the purpose of satisfying said obligations of the said John T. Beamer. The said John T. Beamer made default in the payment of some of these obligations set forth in the deed of trust, and thereupon the trustees of the Beamer Syndicate, under the terms of said deed of trust, declared all of said obligations due and payable at once, and directed the said Alonzo M. Snyder, as trustee, to sell said entire body of land for the purpose of paying off and discharging said obligations of the said John T. Beamer. The said Alonzo M. Snyder, as trustee, did sell the entire body of land in strict accordance with the terms of said deed of trust unto the Beamer Syndicate, and did make one deed conveying said entire body of land unto the Beamer Syndicate.

This was the situation when the agreement of January 2, 1919, was made between the Beamer Syndicate and the American Rio Grande Land & Irrigation Company, by the terms of which the Beamer Syndicate assumed the payment of the entire indebtedness of John T. Beamer and the charges that were secured by liens on said land, and paid to the American Rio Grande Land & Irrigation Company $10,000 thereon, and this continued to be the situation until, after the agreement of June 28, 1919, was made between the Beamer Syndicate and the American Rio

Grande Land & Irrigation Company extending the period for full performance by the Beamer Syndicate of the terms of said agreement of January 2, 1919, and until after the purchase by W. E. Stewart acting for the Stewart Farm Mortgage Company, of the said John T. Beamer indebtedness from the American Rio Grande Land & Irrigation Company subject to said agreements, and until after W. E. Stewart had caused his agent Barron to sell and convey the land unto him under the terms of the deeds of trust that had been executed by John T. Beamer, and until after the Beamer Syndicate had filed its cross-action and its plea over against W. E. Stewart in the suit that had been brought by the American Rio Grande Land & Irrigation Company to recover the amount of the water charges (the flat rate) against said land, in which cross-action and plea over the Beamer Syndicate sought to recover of the American Rio Grande Land & Irrigation Company and W. E. Stewart the title and possession of the entire body of land involved in this suit, and prayed for a decree requiring a specific performance of said agreements, and tendered full performance of said agreements by the Beamer Syndicate on its part.

The law abhors a multiplicity of suits. The very purpose of the Beamer Syndicate in making these additional parties was to determine whether or not these purchasers were innocent purchasers in order to enable the Beamer Syndicate to obtain appropriate relief in the suit if any of them should prove to be innocent purchasers. And the purpose of making the Stewart Farm Mortgage Company a party was to enable the court to determine whether or not it was the real party at interest for whom W. E. Stewart acted in the entire matter, in order that the Beamer Syndicate might obtain appropriate relief against it. And the purpose of making the assignees of notes of such purchasers parties was to enable the court to determine whether or not these assignees of such notes were innocent purchasers of such notes before maturity and, if not, to have the apparent liens on portions of the land securing such notes canceled and removed as clouds upon the title of the Beamer Syndicate. And the purpose of making said receivers parties was to get appropriate relief against them where such receivers had received and appropriated money that was equitably claimed to belong to the Beamer Syndicate, and also to cancel and remove any cloud upon their title to any portion of the land that was cast by the claim of either of said receivers to a lien of any of said land or a claim of title by either of said receivers to any portion of said body of land. Dangerfield v. Paschal, 20 Tex. 536; 9 Ruling Case Law, § 52, pp. 885, 886; Buchanan v. Adkins, 175 F. 692, 99 C. C. A. 246; Greer v. Mezes,

65 U. S. (24 How.) 268, 16 L. Ed. 661. Misjoinder is not always an objection. Langford v. Power (Tex. Civ. App.) 196 S. W. 662. Indeed, this very question was decided in Beamer Syndicate v. Stewart (Tex. Civ. App.) 236 S. W. 797. The necessity to bring in all the proper parties was one of the grounds that cause us to remand the case.

For the same reason we overrule the fourteenth proposition. The sale of the vendor's lien notes by the American Rio Grande Land & Irrigation Company to Stewart and the assignment of the debt did not pass, under the facts in this case, to him the legal title. Cassady v. Frankland, 55 Tex. 452.

[10] Appellee bought the property subject to the outstanding liens and debts. When he was required by the American Rio Grande Land & Irrigation Company to assume the payment thereof, as was done in the written extension which that company accepted, it was a promise to pay the notes for which the mortgage was given to the holder of the notes, and not to the maker. Gunst v. Pelham, 74 Tex. 586, 12 S. W. 233; Knapp v. Conn. Mutual Life Ins. Co., 85 F. 329, 29 C. C. A. 171, 40 L. R. A. 861; Fievel v. Zuber, 67 Tex. 275, 3 S. W. 273.

[11] Appellant Stewart was bound by the agreement made by his assignor. Phillips v. Holland, 149 Wis. 524, 136 N. W. 191; 19 Ruling Case Law, pp. 353–356; Cofer v. Beverly (Tex. Civ. App.) 184 S. W. 608; Cooney v. Dandridge (Tex. Civ. App.) 158 S. W. 178; Estell v. Cole, 62 Tex. 695.

After the American Rio Grande Land & Irrigation Company made the agreements, and afterwards accepted the sum of $13,800 and held the $62,000, it could not declare the contract at an end. Certainly, not until after the 31st day of July, 1919.

If time were the essence of the contract, then the American Rio Grande Land & Irrigation Company had waived it, and it and its successor were estopped to declare the contract at an end. But the contract was supported by sufficient valid consideration—it could be safely said by a very valuable consideration—and no court of equity under such a state of facts will allow the destruction of appellee's valuable rights to secure the benefits of its purchase. It would be most inequitable to deny the rights of Beamer Syndicate to carry out the lawful efforts to secure the title to all this property in the face of all the testimony and the findings of the jury upon the facts.

As to which parties to this suit have presented the cleaner hands and clearer equities, the question is solved by the jury under the facts found in favor of appellees, and sustained by the learned trial judge, who has placed his seal of approval thereon by the judgment of the court.

In addition to the brief filed by appellants, R. B. Creager, receiver of Stewart Farm Mortgage Company, Conrad H. Mann, receiver of Stewart Farm Mortgage Company, Stewart Farm Mortgage Company, and W. E. Stewart, briefs have been filed by A. R. Haven, C. I. Haven, Charles M. McNeal and M. Alice McNeal, F. N. Kindel, E. G. Brashear, Orion E. Vivion, A. A. Simmons, George M. Wagner, A. E. C. Coy, and Bertha Coy, W. G. Beatty, George Waldeck, Fred Rosenthal, C. S. Osborn, F. E. Ludwig, S. V. Brandon, C. L. Dickey, J. M. Lloyd, John L. Leobolt, B. W. Tolefson, and Henry Scheider, Peter Torp, W. M. Wilson, C. M. Chapman, Heinrich Schmidt, Albert Thalacker, W. C. Clark, C. E. Kaufman, J. A. Smith, George P. Elliott.

[12] The parties named purchased the land from W. E. Stewart and the Stewart Farm Mortgage Company long after this suit had been pending and after appellees had filed its lis pendens notice. Being assignees of Stewart of the small tracts conveyed out of the entire body of land in controversy in this suit, in which they paid cash more than the total amount of the indebtedness that John T. Beamer had incurred for the purchase price of said land that constituted a charge against the land, the Beamer Syndicate and its trustees were not bound to the said Orion E. Vivion and his coappellants in any sum whatever as a condition precedent to maintaining this suit.

On January 8, 1920, the Beamer Syndicate and its trustees filed in the office of the county clerk of Hidalgo county, Tex., where the suit was pending, a lis pendens notice setting forth all matters required by the statute, which was recorded at once in Volume 1, at pages 388–390, of the Lis Pendens Records of said Hidalgo county, Tex.

The appellant C. S. Osborn purchased the small tract claimed by him from W. E. Stewart on January 23, 1920. The appellant Arthur A. Simmons purchased the small tract claimed by him from W. E. Stewart on February 24, 1920. The appellant Orion E. Vivion purchased the small tract claimed by him from W. E. Stewart on June 25, 1920. Glenn Thomas, who had purchased from W. E. Stewart, sold and conveyed the small tract claimed by him to the appellant F. E. Ludwig on July 27, 1920. The appellant George Waldeck purchased the small tract claimed by him from W. E. Stewart on January 4, 1921. The appellant A. E. C. Coy purchased the small tract claimed by him from W. E. Stewart on June 4, 1921. And the appellant W. G. Beatty purchased the small tract claimed by him from W. E. Stewart on October 8, 1921. Briscoe v. Bronaugh, 1 Tex. 326, 46 Am. Dec. 108; Lee v. Salinas, 15 Tex. 495; Harle v. Langdon, 60 Tex. 555; Randall v. Snyder, 64 Tex. 350; Wortham v. Boyd, 66 Tex. 401, 1 S. W. 109; Allen-West Com. Co. v. Gibson (Tex. Civ. App.) 228 S. W. 342; Flanagan v. Pearson, 61 Tex. 302; Smith v. Olsen, 92 Tex. 181, 46 S. W. 631;

Bailey v. Laws, 3 Tex. Civ. App. 529, 23 S. W. 20; Ferguson-McKinley & Co. v. Garrett (Tex. Com. App.) 252 S. W. 738; Heard v. Vineyard (Tex. Com. App.) 212 S. W. 489.

[13] Our present law of lis pendens is purely statutory, and the date of the notice to all persons given thereby is the date of the filing with the clerk of the county court of the particular county and is effective from the time of its filing. Present Revised Statutes, arts. 6837, 6839, and 6840; Pope v. Beauchamp (Tex. Com. App.) 206 S. W. 928.

[14] Vivion and his said codefendants took possession of the land they purchased, and therefore could not be designated as mortgagees or lienholders in possession, such as to require the tender of payment to them by the Beamer Syndicate and its trustees of any sums of money in order to entitle the Beamer Syndicate and its trustees to recover. Such a lienholder in possession, as can require the real owner to tender the amount that was paid toward discharging a valid lien, must have obtained the possession lawfully, and not in violation of and antagonistic to the real owner's rights. Morrow v. Morgan, 48 Tex. 304; Calhoun v. Lumpkin, 60 Tex. 185; Becker v. McCrea, 193 N. Y. 423, 86 N. E. 463, 23 L. R. A. (N. S.) 754; Barson v. Mulligan, 191 N. Y. 306, 84 N. E. 75, 16 L. R. A. (N. S.) 151; Russell v. Ely, 2 Black, 575, 17 L. Ed. 258; Stouffer v. Harlan, 68 Kan. 135, 74 P. 610, 64 L. R. A. 320, 104 Am. St. Rep. 396; Banning v. Sabin, 45 Minn. 431, 48 N. W. 8; Howell v. Leavitt, 95 N. Y. 617.

Upon the finding of the jury the court proceeded to enter its decree in favor of the Beamer Syndicate and its trustees against W. E. Stewart and the Stewart Farm Mortgage Company upon an accounting, against a number of the purchasers who had purchased from W. E. Stewart, in favor of a number of the purchasers who had purchased from W. E. Stewart, and against the two receivers as to certain notes and indebtedness held by them under their appointment as receivers, holding that they and W. E. Stewart and the Stewart Farm Mortgage Company were trustees for the Beamer Syndicate as to the purchase prices that had been paid and were to be paid by innocent purchasers without notice of various tracts of land, and against the Beamer Syndicate and its trustees in favor of certain purchasers of certain tracts as innocent purchasers for value without notice. By the terms of said decree, the Beamer Syndicate and its trustees recovered the title and possession of about 600 acres of the land involved in this suit, but were required to pay into court for the purchasers of said land certain specific sums of money respectively as a condition precedent to obtaining any writ of restitution and providing that a failure to pay such specific sums of money into court within a

period of one year from the date of the decree should have the effect of vesting the title to the respective tracts bought by said purchasers free of any and all claims of the Beamer Syndicate, unless an appeal should be taken from said decree by said purchasers or any of them, in which event the Beamer Syndicate and its trustees were allowed the period of one year after the final determination of such appeal within which to pay into court the specific sums of money awarded in favor of the purchasers so appealing.

In the accounting rendered by said decree between the Beamer Syndicate and its trustees on the one side, and W. E. Stewart, the Stewart Farm Mortgage Company, and the two receivers of its properties on the other side, the full amount of the entire indebtedness evidenced by the notes of John T. Beamer for a part of the purchase price of the land involved in this suit was charged against the Beamer Syndicate and its trustees; and W. E. Stewart and the Stewart Farm Mortgage Company were charged with the full amount of the purchase prices of the small tracts that they had sold out of the land in controversy to purchasers where the title and possession of the small tracts had not been recovered by the Beamer Syndicate and its trustees against such purchasers.

The decree adjudged W. E. Stewart and the Stewart Farm Mortgage Company, trustees for the Beamer Syndicate and its trustees as to all the proceeds of the small tracts of land sold to purchasers that were adjudged to be innocent purchasers for value as against the Beamer Syndicate and its trustees; and said decree further removed the clouds upon the title to about 600 acres of land, the title and possession of which were awarded by the decree in favor of the Beamer Syndicate and its trustees cast upon said title by the claims of each and all of the defendants in said plea over. Said decree also awarded a recovery in favor of the Beamer Syndicate and its trustees against Conrad Mann, the receiver appointed by the federal court sitting in Kansas City, Mo., for a small amount of the notes of purchasers of small tracts that he had collected after his appointment as such receiver, but charging against the Beamer Syndicate and its trustees the said amount in said accounting.

The said decree of the court also charged against the said W. E. Stewart and the Stewart Farm Mortgage Company the amount of said $13,000, with interest, that it was agreed at the former trial of this cause, should be paid by W. E. Stewart to the Beamer Syndicate and its trustees in consideration of the dismissal of the suit as to the tract of land composing the townsite proper of the town of Weslaco.

This is a very proper disposition of the issues and of all the equities, and there are no good reasons presented to disturb it. This

litigation has been long pending and has already consumed much time and expense in its disposition.

When Stewart purchased the notes, he did so advisedly and knew he was hazarding a lawsuit, though he chanced very little, since he knew the notes were well secured and he would recover the amount of the face value of the notes, with interest. And he knew that appellee was then making every effort to discharge the notes, having placed $62,000 in the hands of the American Rio Grande Land & Irrigation Company for that purpose, and there was only a small additional amount to raise. He knew John T. Beamer had no interest in the land because he had parted with all his title and the equity of redemption. But he also knew of the interest owned and possessed and earnestly urged and asserted by the Beamer Syndicate. This he attempted to destroy by the foreclosure he made in contravention of the rights that his assignor recognized and would have carried out, and which were charged upon Stewart by the American Rio Grande Land & Irrigation Company.

From the view we take of this case, it is unnecessary to pass on appellees' cross-assignments.

There are no reversible errors assigned. The case has been fairly tried and substantial justice administered.

We overrule appellant, Creager's and his coappellants' assignments against their codefendants contained in the third supplemental brief.

For the reasons stated, all assignments and propositions presented by any and all parties are overruled, and the judgment is affirmed.